# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | :    Master File No. 12-md-02311<br>:    Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | : |
| THIS DOCUMENT RELATES TO: | : |
| All Dealership Actions<br>All End-Payor Actions | :    Child Case: W:12-cv-00102<br>:    Child Case: W:12-cv-00103<br>:    **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END-PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... ii

INDEX OF EXHIBITS ................................................................................................. vi

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................1

I.  IPPS' COMPLAINTS REMAIN DEFICIENT UNDER *TWOMBLY* ...............................1

II.  IPPS' ARGUMENTS FAIL TO ESTABLISH ARTICLE III STANDING ......................3

    A.  IPPs Have Not Established Standing To Assert Their Claims ...............................3
    B.  IPPs' Reliance On *Fallick* And *Hoving* Does Not Remedy Their Lack Of Standing In States Where No Named Plaintiff Resides ...........................................5

III.  IPPS' OPPOSITION DOES NOT CURE THEIR DEFICIENT ALLEGATIONS OF ANTITRUST INJURY ..........................................................................................6

IV.  IPPS' ARGUMENTS DO NOT SAVE THEIR CLAIMS UNDER MANY STATE ANTITRUST AND CONSUMER PROTECTION LAWS...................................9

    A.  IPPs Concede That Many Of Their State Law Claims Should Be Dismissed ..........................................................................................................9
    B.  *Shady Grove* Does Not Save IPPs' Claims Under Illinois Antitrust Law, Or Montana Or South Carolina Consumer Protection Laws .................................10
    C.  IPPs' Assertions Regarding Retroactive Application Of Four Repealer Statutes Are Contrary To Law ...............................................................................11
    D.  Montana, Missouri And Massachusetts Consumer Protection Laws Do Not Support The Auto Dealers' Tortured Interpretations.............................................11
    E.  IPPs Fail To Sufficiently Allege The Nexus With Intrastate Commerce That The Consumer Protection And Antitrust Laws of Twelve States Require ...................................................................................................................12
    F.  IPPs Cannot Salvage Their State Consumer Protection Claims By Ignoring Or Misstating Relevant State Case Law .................................................13

V.  IPPS' UNJUST ENRICHMENT CLAIMS FAIL .............................................................14

VI.  IPPS HAVE NOT ADEQUATELY PLED AN INJUNCTION CLAIM..........................15

CONCLUSION...............................................................................................................15

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Associated General Contractors v. California State Council of Carpenters*,
  459 U.S. 519 (1983) ................................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 2

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .................................................................. 3

*California v. ARC America*,
  490 U.S. 93 (1989) .................................................................................. 8

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) .................................................................. 2

*Cason-Merenda v. Detroit Medical Center*,
  2008 WL 880286 (E.D. Mich. Mar. 31, 2008) ...................................... 2

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
  2000 WL 33162197 (Mass. Super. Ct. Sept. 29, 2000) ......................... 12

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
  436 Mass. 537 (2002) .............................................................................. 14

*Cole v. General Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) .................................................................. 3

*Committee for Immigrant Rights of Sonoma County v. County of Sonoma*,
  2010 WL 2465030 (N.D. Cal. June 11, 2010) ....................................... 2

*Creek Coal Co. v. Bates*,
  134 F.3d 734 (6th Cir. 1997) .................................................................. 11

*D.R. Ward Construction Co. v. Rohm & Haas Co.*,
  470 F. Supp. 2d 485 (E.D. Pa. 2006) ................................................... 4, 8

*Dalton v. Camp*,
  548 S.E.2d 704 (N.C. 2001) ................................................................... 12

*Davis v. Powertel*,
  776 So. 2d 971 (Fla. 1st DCA 2000) ..................................................... 13

*Fallick v. Nationwide Mutual Insurance Co.*,
    162 F.3d 410 (6th Cir. 1998) ................................................................. 5, 6

*Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co.*,
    753 F. Supp. 2d 792 (E.D. Wis. 2010) .................................................... 4

*Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co.*,
    2012 WL 3841397 (E.D. Wis. Sept. 5, 2012) ................................. 4, 8, 14

*Galstaldi v. Sunvest Communities USA, LLC.*,
    637 F. Supp. 2d 1045 (S.D. Fla. 2009) ................................................... 13

*Gibbons v. J. Nuckolls, Inc.*,
    216 S.W.3d 667 (Mo. 2007) ................................................................... 12

*Hoving v. Transnation Title Insurance Co.*,
    545 F. Supp. 2d 662 (E.D. Mich. 2008) ................................................... 5

*Hyland v. Homeservices of America, Inc.*,
    2008 WL 4000546 (W.D. Ky. Aug. 25, 2008) .......................................... 4

*Ianelli v. U.S. Bank*,
    996 A.2d 722 (Vt. 2010) ........................................................................... 6

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .................................................................................. 7

*In re Aftermarket Filters Antitrust Litigation*,
    2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ................................... 4, 8, 11

*In re Digital Music Antitrust Litigation*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) .......................................... 10, 11, 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................... 7

*In re Flash Memory Antitrust Litigation*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................... 8

*In re Fresh & Process Potatoes Antitrust Litigation*,
    834 F. Supp. 2d 1141 (D. Idaho 2011) ..................................................... 9

*In re Intel Corp. Microprocessor Antitrust Litigation*,
    496 F. Supp. 2d 404 (D. Del. 2007) ......................................................... 8

*In re Magnesium Oxide Antitrust Litigation*,
    2011 WL 5008090 (D.N.J. Oct. 20, 2011) ........................................... 5, 6

*In re Microsoft Corp. Antitrust Litigation*,
  241 F. Supp. 2d 563 (D. Md. 2003)........................................................................14

*In re New Motor Vehicles (NMV) Canadian Export Antitrust Litigation*,
  350 F. Supp. 2d 160 (D. Me. 2004)........................................................................14

*In re Optical Disk Drive Antitrust Litigation*,
  2012 WL 1366718 (N.D. Cal. April 19, 2012) ......................................................10

*In re Packaged Ice Antitrust Litigation*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011) ........................................................ *passim*

*In re Polyurethane Antitrust Litigation*,
  799 F. Supp. 2d 777 (N.D. Ohio 2011) ....................................................................2

*In re Processed Egg Products Antitrust Litigation*,
  851 F. Supp. 2d 867 (E.D. Pa. 2012).................................................... 4, 11, 13, 14

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
  587 F. Supp. 2d 27 (D.D.C. 2008)........................................................................2-3

*In re Refrigerant Compressors Antitrust Litigation*,
  2012 WL 2917365 (E.D. Mich. July 17, 2012)................................................. 2, 5, 6

*In re Static Random Access Memory (SRAM) Antitrust Litigation*,
  264 F.R.D. 603 (N.D. Cal. 2009) ............................................................................4

*In re Terazosin Hydrochloride Antitrust Litigation*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001)..................................................................14

*In re TFT-LCD Antitrust Litigation*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008)............................................................ 8, 13

*In re TFT-LCD Antitrust Litigation*,
  2011 WL 3738985 (N.D. Cal. Aug. 24, 2011) ......................................................11

*In re TFT-LCD Antitrust Litigation*,
  2012 WL 253298 (N.D. Cal. Jan. 26, 2012)............................................................4

*In re TJX Cos. Retail Securities Breach Litigation*,
  564 F.3d 489 (1st Cir. 2009) ................................................................................12

*Kaufman v. Sirius XM Radio, Inc.*,
  2012 WL 1109397 (2d Cir. 2012) ........................................................................13

*Loeb Industries, Inc. v. Sumitomo Corp.*,
  306 F.3d. 469 (7th Cir. 2002) ................................................................................4

*Lorix v. Crompton Corp.*,
  736 N.W.2d 619 (Minn. 2007) ........................................................ 8, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ 3

*Montanans for Justice v. State ex rel. McGrath*,
  146 P.3d 759 (Mont. 2006)............................................................ 12

*Shady Grove Orthopedic Assocs. v. Allstate Insurance Co.*,
  130 S. Ct. 1431 (2010) .................................................................. 10

*Stutzle v. Rhonepoulenc S.A.*,
  2003 WL 22250424 (Pa. Com. Pl. Sept. 26, 2003) ...................... 14

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012) ........................................................... 3

*U.S. v. Furukawa Electric Co.*,
  No. 11-cr-20612-GCS (E.D. Mich. Nov. 16 , 2011) ...................... 15

*Von Der Werth v. Manville*,
  No. 07-2012 (N.D. Ga. Mar. 23, 2009) ........................................... 9

*Wallis v. Ford Motor Co.*,
  208 S.W.3d 153 (Ark. 2005) ......................................................... 13

*Weaver v. Cabot Corp.*,
  2004 WL 3406119 (N.C. Super. Ct. Mar. 26, 2004) ........................ 9

*Williams Electronic Games v. Garrity*,
  366 F.3d 569 (7th Cir. 2004) ......................................................... 14

## STATUTES

Massachusetts Antitrust Act, Mass. Gen. Laws chapter 93, § 1 ................... 10

Montana Code Ann. § 30-14-201 .............................................................. 10

**INDEX OF EXHIBITS**

Exhibit A:          Summary Of State Law Claims Still At Issue

Exhibit B:          Index Of Authorities Cited In Appendices

Exhibit C:          Appendix Of Authority In Response To IPPs' Exhibit 3 and Supporting Argument That IPPs Who Purchased Or Leased A Vehicle In Which A Wire Harness System Was A Component Part Cannot Demonstrate Antitrust Standing

Exhibit D:          Appendix Of Authority Supporting Argument That *Shady Grove* Does Not Allow IPPs To Bring Class Actions Under The Laws Of Illinois, Montana And South Carolina

Exhibit E:          Appendix Of Statutory Authority Supporting Argument That *Shady Grove* Does Not Allow IPPs To Bring Class Actions Under the Laws Of Illinois, Montana And South Carolina

Exhibit F:          Appendix Of Authority Supporting Argument That IPPs Fail To Show That Their Boilerplate Allegations Allege A Sufficient Nexus With Intrastate Commerce As The Consumer Protection Laws Of Four States Require

Exhibit G:          Appendix Of Authority Supporting Argument That IPPs Fail To Show That Their Boilerplate Allegations Allege A Sufficient Nexus With Intrastate Commerce As The Antitrust Laws Of Eight States Require

Exhibit H:          Appendix Of Authority Supporting Argument That Unjust Enrichment Is Unavailable Where, As Here, A Party To A Voluntary Agreement Received The Benefit Of Its Bargain

Exhibit I:          Appendix Of Authority Supporting Argument That IPPs' Unjust Enrichment Claims Fail In The Seven States That Require A Direct Benefit Conferred By Plaintiffs

Exhibit J:          Appendix of Authority Supporting Argument That IPPs Continue To Misapply The Unjust Enrichment Law Of Certain States

Exhibits K-U:       Copies of Unpublished Authority Cited in Reply Memorandum and Exhibits B-J

**INTRODUCTION**

Defendants do not dispute that three defendants pled guilty to fixing prices for wire harnesses, one to fixing prices for ABS skid sensor wires, and one to fixing prices for a particular type of electronic control unit known as a body ECU sold to certain automobile manufacturers. Plaintiffs are not, however, the automobile manufacturers referenced in the guilty pleas. Nor do their complaints cover only the products at issue or the time periods described in those pleas. Rather, in their zeal to bring a case in which they can seek the broadest possible damages, the Indirect Purchaser Plaintiffs ("IPPs") have fundamentally ignored the facts of the guilty pleas on which they rely so heavily. They allege instead a far broader conspiracy than described in the guilty pleas, yet they do not plead any facts to support that claim. IPPs' complaints allege not five conspirators but 25, and a conspiracy to fix not the prices of certain products sold to certain automobile manufacturers, but one that covers a dozen different products installed in all car models sold by all manufacturers in the United States since 2000.

The questions for this Court are whether *that* conspiracy, altogether different than the conspiracies described in the pleas, has been adequately pled, and whether *these plaintiffs* are the right ones to assert claims. The existence of guilty pleas does not relieve IPPs of their obligation to meet fundamental pleading standards, nor does it give anyone and everyone standing to sue. But rather than explain in their opposition exactly how they have met those obligations, IPPs primarily argue, wrongly, that they do not need to do so. IPPs have utterly failed to meet their pleading obligations under both federal and state law. Their complaints must be dismissed.

**ARGUMENT**

**I.     IPPS' COMPLAINTS REMAIN DEFICIENT UNDER *TWOMBLY***

IPPs' complaints suffer from the same flaws as the Direct Purchasers' complaint and Defendants therefore incorporate by reference Defendants' Collective Reply Memorandum in

Support of Their Collective Motion To Dismiss the Direct Purchaser Actions ("Defs. DPP Reply").   Additionally, IPPs concede that their complaints lack allegations regarding each Defendant's alleged conduct.   Their claim that "*Twombly* does not require defendant-specific allegations" (ECF No. 390 ("Opp.") at 6) is wrong.   *See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2917365, at *7 (E.D. Mich. July 17, 2012) (plaintiffs must "'specify how [each] defendant [was] involved in the alleged conspiracy'") (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012)).[1]

IPPs' claims fail for the additional reason that they have not pled facts that plausibly suggest that any of them *personally* is entitled to relief.   Their assertion that they are not required to do so (Opp. at 5-6) is not the law.   Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief" and "does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (citations omitted).   None of the cases IPPs cite relieves them of this fundamental obligation,[2] nor have they satisfied it.   IPPs' failure to meet the requirements of *Twombly* (both as to the alleged conspiracy and their entitlement to relief) warrants dismissal of both of their complaints.[3]

---

[1] The court in *Cason-Merenda v. Detroit Medical Center*, which IPPs cite, recognized that dismissal is appropriate where, as here, a complaint "use[s] . . . the term 'defendants' to refer to multiple defendants situated very differently from one another in the context of general and global allegations."   2008 WL 880286, at *1 (E.D. Mich. Mar. 31, 2008).   In that case, the plaintiffs alleged that similarly situated defendants engaged in identical anticompetitive conduct, and the court concluded that defendant-specific allegations were unnecessary *because the defendants were similarly situated.   Id.* at *1-2.   IPPs have not alleged, and cannot allege, the same here.

[2] *In re Polyurethane Antitrust Litig.*, 799 F. Supp. 2d 777 (N.D. Ohio 2011), did not address the issue, and *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma,* 2010 WL 2465030 (N.D. Cal. June 11, 2010), concerns a Section 1983 claim and is inapposite.

[3] None of IPPs' other cited cases save their claims.   The complaint in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 34 (D.D.C. 2008), survived dismissal because, unlike IPPs' claims, it included detailed allegations against each defendant, including "who initiated the discussion, . . . what they proposed, the object of the alleged conspiracy, the fact that

## II.     IPPS' ARGUMENTS FAIL TO ESTABLISH ARTICLE III STANDING

### A.     IPPs Have Not Established Standing To Assert Their Claims

IPPs concede that their complaints contain no factual allegations that show a causal connection between Defendants' alleged misconduct and IPPs' alleged injury. They incorrectly claim that the conclusory allegation that they paid more for their cars is enough to satisfy Article III.[4]  IPPs misstate the law, and disregard the fundamental problem here. First, the cases that IPPs rely on to argue that "general factual allegations of injury are sufficient," *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007),[5] were both decided before *Twombly*. Post-*Twombly*, IPPs must allege facts that plausibly establish the elements of Article III standing, including "a causal connection between the injury and the conduct complained of." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012) (quoting *Lujan*, 504 U.S. at 560) (internal quotations omitted). Moreover, "the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotations omitted). IPPs' complaints fall far short of that standard.

Second, nowhere in their opposition do IPPs address the real issue: they are complaining about an alleged overcharge that is some percentage of the cost of components that generally total less than 2% of the price of a car. Because even a substantial overcharge would be

---

an agreement was reached among all four defendants, and where and when the agreement was reached."  Defendants address the remaining cases that IPPs cite in Defs. DPP reply.

[4] (Opp. at. 8-9.)  IPPs do not even contend in their opposition that their purported aftermarket wire harness purchases could confer Article III standing.

[5] IPPs also cite *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), for this proposition, but that case did not address the level of detail required in a complaint to establish standing.  Moreover, neither *Braden* nor *Cole* supports IPPs' claim that "detailed allegations of impact are not required."  The plaintiffs in both cases alleged far more facts to show that they were entitled to relief than IPPs do here.  *See id.* at 590-92; *Cole*, 484 F.3d at 720-21.

negligible in relation to the price of the car, IPPs need (but lack) something more than a conclusory assertion to plead that they were injured. The cases they rely on did not present that problem.[6] In *Hyland v. Homeservices of America, Inc.*, 2008 WL 4000546, at \*3 (W.D. Ky. Aug. 25, 2008), plaintiff home buyers alleged that the defendants conspired to charge an artificially high commission rate, which was passed on to them. Unlike here, the *Hyland* plaintiffs' alleged injury was plausible because it was only one step removed from, and traceable to, the defendants' conduct. In *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009), the complaint contained detailed allegations that the cost of SRAM was a significant component of the selling price of the direct purchaser's products, the market for these products was highly competitive, and the direct purchasers' net margins were extremely thin. No. 07-1819, ECF No. 902 ¶¶ 152-56 (N.D. Cal. Nov. 19, 2009) (Ex. O). The indirect purchasers alleged that the direct purchasers passed 100% of the increases on to them so that increases in SRAM prices directly led to increases in the prices that indirect purchasers paid. *Id.*

Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co.*, 2012 WL 3841397 (E.D. Wis. Sept. 5, 2012) (Ex. M), is also inapposite because the plaintiffs there bought standalone sheet metal parts in the aftermarket, not products containing allegedly price-fixed components. *Id.* at \*1; *see also Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 753 F. Supp. 2d 792, 794 (E.D. Wis. 2010). Thus, none of IPPs' cases are instructive here, and IPPs have not given this Court a single basis on which it could find Article III standing.

---

[6] Article III standing was not in dispute in *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d. 469, 480-81 (7th Cir. 2002), *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at \*5 (N.D. Ill. Nov. 5, 2009), or *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 881-91 (E.D. Pa. 2012). *D.R. Ward Construction Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 491-93 (E.D. Pa. 2006), was decided before *Twombly* and applied the *Conley v. Gibson* standard. *In re TFT-LCD Antitrust Litig.*, 2012 WL 253298, at \*1 n.2 (N.D. Cal. Jan. 26, 2012), addressed the question of whether a court could certify a class whose members did not purchase products from the defendants.

**B.    IPPs' Reliance On *Fallick* And *Hoving* Does Not Remedy Their Lack Of Standing In States Where No Named Plaintiff Resides**

This District recently dismissed similar antitrust class actions based on the plaintiffs' lack of standing to assert claims under the laws of states in which no plaintiff resided.  *See, e.g.*, *Refrigerant Compressors*, 2012 WL 2917365, at *6-7; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-59 (E.D. Mich. 2011).  This Court should do the same here, and reject IPPs' invitation to ignore these cases.

The only Sixth Circuit case that IPPs cite, *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), supports Defendants.[7]  The Sixth Circuit did not hold in *Fallick* that courts should wait until class certification to evaluate standing, as IPPs claim; it held just the opposite.  The court stressed that "individual standing is a *prerequisite* for all actions, including class actions" and held that "[a] potential class representative must demonstrate individual standing" and "cannot acquire such standing merely by virtue of bringing a class action."  *Id.* at 423 (emphasis added); *see also In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011) ("Otherwise, a plaintiff would be able to bring a class action complaint under the laws of nearly every state . . . without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis.").  In *Fallick*, once the plaintiff had established standing to bring ERISA claims on behalf of himself, the court held that there was no need to conduct a separate constitutional standing inquiry for putative class

---

[7] IPPs also cite *Hoving v. Transnation Title Insurance Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008), which this District declined to follow in two more recent cases.  *See Packaged Ice*, 779 F. Supp. 2d at 656-57 (following "the better-reasoned opinions on this issue which recognize and refuse to abandon the fundamental prudential standing requirements of Article III" and holding that in cases "where the putative plaintiffs' injury is in doubt, Article III standing issues should be resolved in the first instance"); *Refrigerant Compressors*, 2012 WL 2917365, at *5-6 (following *Packaged Ice*).

members.  162 F.3d at 423-24.  That is not the situation here.  Here, IPPs have not established that they have standing to assert claims under laws of multiple states with which they have no connection.  The class action mechanism does not relieve them of that obligation.  *See id.* at 411-13, 423; *Refrigerant Compressors*, at 8-10; *Packaged Ice*, 779 F. Supp. 2d at 653-58.

IPPs' fallback argument that the laws of states in which none of them reside do not require in-state effects or residency is meritless.  Auto Dealers ("ADs") concede that South Carolina and Montana (where no AD resides) require an actual effect on those states' residents. (ECF No. 431 ("Errata") at *3.)[8]  They ignore the legislative history of Vermont's Consumer Fraud Act, which states that it was enacted to "protect [Vermont's] citizens."  *Ianelli v. U.S. Bank*, 996 A.2d 722, 726 (Vt. 2010).   And IPPs' own authority shows that the District of Columbia, Hawaii, Maine, and North Dakota all require that the conduct occurred, or the effect was felt, in-state.  (Errata at *1 (citing *Magnesium Oxide*, 2011 WL 5008090, at *8 n.10).)  IPPs' complaints do not meet these standards.  Their claims under South Carolina, Montana, Vermont, the District of Columbia, Hawaii, Maine and North Dakota law must be dismissed.

## III.    IPPS' OPPOSITION DOES NOT CURE THEIR DEFICIENT ALLEGATIONS OF ANTITRUST INJURY

IPPs do not dispute that *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), applies to state law claims in those states that have explicitly adopted it.  (*See* Opp. at 15).[9]  As explained in Defendants' opening brief, Component Part Plaintiffs have failed to establish that they meet the *AGC* test, and thus the Court should dismiss their antitrust claims under those states, at a minimum.  (*See* Ex. C.)  Nothing IPPs say in

---

[8] Despite including no IPPs that reside in any of these venues, ADs assert claims under the laws of Hawaii, Maine, Montana, North Dakota, South Carolina, and Vermont, and EPs assert claims under District of Columbia law.  (*See* Errata at *1 & n.1.)

[9] Despite IPPs' concession, they appear to challenge the application of *AGC* in every single state. (Opp. at Ex. 3.)  However, IPPs' case law does not support the result they advocate.  (*See* Ex. C.)

6

their opposition changes that.[10]

Despite recognizing that many states have explicitly adopted *AGC*, IPPs urge the Court not to apply the *AGC* factors *to any state claim* (Opp. at Ex. 3) and to hold that any plaintiff who purports to be an indirect purchaser automatically has standing, no matter how remote or attenuated his or her claims are from the alleged violation. That is not the law. IPPs' position is inconsistent with the law of the states that have adopted *AGC*, the states that look to federal law to interpret and apply state antitrust laws, the states that have adopted modified versions of *AGC*, and those states in which courts routinely preclude plaintiffs from recovering for alleged injuries that are too remote or speculative. (Ex. C; ECF No. 230 ("Defs. Br.") at 12-13 & nn. 6-8.)

IPPs' argument is based on a mischaracterization of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). That case stands solely for the principle that indirect purchasers do not suffer injuries cognizable under Section 4 of the Clayton Act. The Supreme Court stated that "the question of which persons have been injured by an illegal overcharge for purposes of § 4 is analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages under § 4." *Id.* at 728 n.7. IPPs argue nonetheless that the *AGC* standing factors do not apply in states that have overturned *Illinois Brick*. (Opp. at 13-15.) IPPs wrongly conflate the *Illinois Brick* rule against indirect purchaser claims with the separate requirement that a plaintiff have antitrust standing. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1087 (N.D. Cal. 2007) (antitrust standing is based on more than a plaintiff's status as direct or indirect purchaser: "[s]tanding may be found lacking . . . for reasons separate and apart from the fact that plaintiffs are indirect

---

[10] IPPs fail entirely to address the remoteness of their alleged injuries – the key issue at the heart of Defendants' motion and *AGC* – and merely re-assert the same conclusory allegations contained in their complaints. (Opp. at 15-17.)

purchasers"). Indeed, the Northern District of California cases that IPPs cite repeatedly both recognized that *AGC* applies to claims under several state laws, including those that IPPs urge this court not to apply it to. *Compare In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1122-23 (N.D. Cal. 2008) (noting propriety of applying *AGC* to Iowa and Nebraska law claims) *and In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1151-53 (N.D. Cal. 2009) (applying *AGC* to Iowa, Nebraska, and California law claims) *with* Opp. at Ex. 3 (arguing that this Court cannot apply *AGC* to IPPs' claims under the same state laws).[11]

IPPs propose no limits on indirect purchaser standing at all. Without such limits, any component purchaser anywhere in the chain, no matter how remote, could subject defendants to burdensome litigation. For example, a buyer of a used car from a seller who also bought the car used could argue that she was "injured" by an allegedly price-fixed wire harness, which generally makes up less than 2% of the cost of the car, without ever showing that the allegedly overpriced product affected the car's original price to the dealer, the price paid for the car by the first consumer, the price the seller paid for the car used, or the price that *she* paid for the car, also used. None of IPPs' cited cases supports such a limitless expansion of antitrust standing.[12] Even *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 630-31 (Minn. 2007), which declined to apply *AGC* to Minnesota's antitrust law, did not hold that indirect purchasers always have standing. Rather,

---

[11] *Aftermarket Filters*, 2009 WL 3754041, at *7-8, and *Fond Du Lac*, 2012 WL 3841397, at *1, are inapposite. Neither case involved component part purchasers.

[12] *California v. ARC America*, 490 U.S. 93, 102 (1989), did not give any "directive" regarding antitrust standing, as IPPs claim. (Opp. at 14.) *ARC America* was a preemption case in which the Supreme Court held that the *Illinois Brick* prohibition on indirect purchaser claims under federal law did not preempt state indirect purchaser statutes. 490 U.S. at 105-06. The Court did not address antitrust standing at all. *D.R. Ward*, 470 F. Supp. 2d 485, which applied the now-outdated *Conley v. Gibson* motion to dismiss standard, has been rejected by other courts. *See, e.g., In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 409 (D. Del. 2007) (holding that *D.R. Ward* was "inconsistent with the prevailing approach to this question by courts applying the laws of states that have rejected the . . . prohibition on indirect purchaser suits").

the court recognized that "there are injuries so remotely related to antitrust violations that courts simply cannot provide relief." *Id.* at 631. The court concluded that "[s]tanding under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law; otherwise, almost any antitrust violation would provide almost any citizen with a cause of action arising from the resulting ripples of harm throughout the state's economy." *Id.*

Numerous other courts have taken the same approach. In *Von Der Werth v. Manville*, No. 07-2012, ECF No. 152 at 10, 16 (N.D. Ga. Mar. 23, 2009) (Ex. U), for example, the court noted that standing in California is less stringent than under federal law, but used *AGC* as a guide to analyze standing under the Cartwright Act, and dismissed claims by purchasers of homes that allegedly contained price-fixed insulation. In *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1176 (D. Idaho 2011), the court dismissed claims based on the plaintiffs' failure to sufficiently allege "(1) causation; (2) remoteness; and (3) injury" – the three "common denominators" for analyzing antitrust standing under state law. Similarly, *Weaver v. Cabot Corp.*, 2004 WL 3406119, at *1 (N.C. Super. Ct. Mar. 26, 2004), did not apply *AGC*, but still held that the plaintiffs' alleged injury was too remote. Thus, indirect purchasers do not have limitless standing. Whether this Court applies *AGC* or any other remoteness standard, IPPs lack standing here. The Court should dismiss the Component Part Plaintiffs' claims.

## IV.   IPPS' ARGUMENTS DO NOT SAVE THEIR CLAIMS UNDER MANY STATE ANTITRUST AND CONSUMER PROTECTION LAWS

### A.   IPPs Concede That Many Of Their State Law Claims Should Be Dismissed

The End Payors ("EPs") do not oppose dismissal of their claims under the Massachusetts Antitrust Act, Mass. Gen. Laws chapter 93, § 1, or Montana Code Ann. § 30-14-201 (Opp. at 17, 31 n.31), and do not dispute that Rhode Island's consumer protection law bars claims by indirect

9

purchasers.  (Opp. at 23; *see* Defs. Br. at 24-25 & n.11.)  The ADs disavow any claims under the antitrust laws of Massachusetts and Missouri (Opp. at 17), and the consumer protection laws in fifteen states (*id.* at nn.4, 16-18, 23-24, 27).[13]  The Court should dismiss these claims.

> **B.**     ***Shady Grove* Does Not Save IPPs' Claims Under Illinois Antitrust Law, Or Montana Or South Carolina Consumer Protection Laws**

IPPs' claim that *Shady Grove Orthopedic Assocs. v. Allstate Insurance Co*., 130 S. Ct. 1431 (2010), allows them to bring class claims under the Illinois Antitrust Act ("IAA"), Montana Unfair Trade Practices Act ("MUTPA"), and South Carolina Unfair Trade Practices Act ("SCUTPA")[14] is not only wrong but ignores precedent from this very District:  "[S]tatutory restrictions on class actions which appear in the very statutes that define the substantive rights at issue survive *Shady Grove* and should continue to be enforced."  *Packaged Ice*, 779 F. Supp. 2d at 661 & n.4 (citing multiple cases); *see* Ex. D (citing Sixth Circuit district court cases).[15]  The IAA, MUTPA, and SCUTPA class action bars survive *Shady Grove* because they define substantive rights and do so within the statutory sections that create the private right of action under each.  (*See* Ex. E.)  Indeed, courts explicitly have found that the IAA and MUTPA class action bars survive *Shady Grove* for this very reason.  *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416-17 (S.D.N.Y. 2011) (cited in Defs. Br. at 22 but ignored by IPPs); Ex. D.  Because *Shady Grove* does not affect the explicit class action bars contained in the

---

[13]  These states include Arizona, Hawaii, Iowa, Kansas, Michigan, Minnesota, Mississippi, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota and Vermont.  (Ex. A (showing state law claims still at issue).)

[14]  (Opp. at 20, 30-32.)  Although IPPs purport to argue in the heading to Section IV.H that their Kansas consumer protection claims are appropriate, IPPs concede later *in the same section* that they do not assert such claims (*see id.* at 30-31 & nn.29-30).

[15]  The only case construing *Shady Grove* that IPPs cite, *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. April 19, 2012), provides no substantive analysis of *Shady Grove*, and states only that "Defendants' attempts to distinguish *Shady Grove* are not persuasive."  *Id.* at *8.  *Optical Disk* thus adds no value to this Court's analysis.

IAA, MUTPA, and SCUTPA, this Court must dismiss IPPs' claims under these statutes.[16]

### C.    IPPs' Assertions Regarding Retroactive Application Of Four Repealer Statutes Are Contrary To Law

IPPs' assertion that this Court cannot dismiss state law claims based on conduct that pre-dates the enactment of those states' statutes is wrong.  A "retroactivity challenge to the application of a statutory amendment is a question of law," *Creek Coal Co. v. Bates*, 134 F.3d 734, 737 (6th Cir. 1997), that should be considered on a motion to dismiss.[17]  The *TFT-LCD* opinion on which IPPs rely misconstrues Nebraska law.  *TFT-LCD*, 2011 WL 3738985, at *3 (N.D. Cal. Aug. 24, 2011).  That court failed to consider the Nebraska legislature's statement that indirect purchasers did not have a cause of action before the amendment.  Nebraska Comm. on Judiciary, Statement of Intent, L.B. 1278 (2002) (Ex. R).  IPPs' claims based on alleged conduct that pre-dates repealer statutes should be dismissed with prejudice.

### D.    Montana, Missouri And Massachusetts Consumer Protection Laws Do Not Support The Auto Dealers' Tortured Interpretations

ADs' disingenuous suggestion that the products they buy and sell for profit are intended for end users' "personal, family or household purposes," conflicts with their own complaint. (*See, e.g.*, ECF No. 85, ¶¶ 50-51, 68-69 ("Plaintiff Lee's Summit . . . purchased [AWHS] for its repair and service business . . . .").)  Moreover, they cite not a single case from Montana or Missouri suggesting that this Court should interpret both states' statutes in a manner contrary to

---

[16] IPPs' assertion that the Court should defer deciding this issue until the class certification stage (Opp. at 31) also fails.  *See, e.g.*, *Packaged Ice*, 779 F. Supp. 2d at 659-61 (analyzing *Shady Grove* argument on motion to dismiss); *Digital Music*, 812 F. Supp. 2d at 416-17 (same).

[17] Indeed, IPPs' own cited authority undercuts their argument.  *See, e.g.*, *Aftermarket Filters*, 2009 WL 3754041, at *6 (dismissing claims where conduct occurred prior to effective date of state statutes); *Processed Eggs*, 851 F. Supp. 2d at 892 (dismissing Utah antitrust claims before May 1, 2006, the effective date of the repealer amendment to Utah Antitrust Act).

their plain language.[18]   The fact that Michigan or Delaware may interpret their laws differently (Opp. at 27) is irrelevant.   Further, ADs ignore the legislative history of Massachusetts General Laws chapter 93A § 11, which indicates that the legislature intended to distinguish between businesses and consumers in its consumer protection law.   *Ciardi v. Hoffman-LaRoche, Ltd.*, 2000 WL 33162197, at *6 (Mass. Super. Ct. Sept. 29, 2000).[19]   ADs' Montana, Missouri and Massachusetts consumer protection law claims should be dismissed with prejudice.

### E.   IPPs Fail To Sufficiently Allege The Nexus With Intrastate Commerce That The Consumer Protection And Antitrust Laws of Twelve States Require

IPPs concede that they must establish a nexus between Defendants' conduct and intrastate commerce to maintain their consumer protection claims in California, Montana, New York, and North Carolina[20] and their state antitrust claims in the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, and West Virginia. (Opp. at 18-20, 25-26.)   They claim, however, that allegations of (a) residency within a state and (b) a nationwide conspiracy are sufficient to meet that requirement under the California, Montana, New York, and North Carolina consumer protection laws.[21]   But IPPs' cited cases

---

[18]   Both states look to the plain language of their statutes to determine their applicability. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669-70 (Mo. 2007); *Montanans for Justice v. State ex rel. McGrath*, 146 P.3d 759, 773 (Mont. 2006).

[19]   *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 496 (1st Cir. 2009), explained that businesses may sue under 93A § 11 for harm *flowing from their business relationships* caused by unfair or deceptive trade practices.

[20]   IPPs also argue that they need not allege aggravating circumstances under North Carolina's consumer protection law, but rely only on outdated federal opinions (*see* Opp. at 22, Ex. 7), while inexplicably ignoring the North Carolina Supreme Court's holding in *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001), that "some type of egregious or aggravating circumstances must be alleged" to state a claim under the NC UPTA.

[21]   IPPs' reliance on *Packaged Ice* for this proposition is misplaced; the portion of the opinion IPPs cite relates to the standards for pleading intrastate commerce under NY *antitrust* law, and is thus irrelevant to the consumer protection analysis.  *Packaged Ice*, 779 F. Supp. 2d at 664.

12

neither undermine Defendants' cited authority[22] nor save IPPs' deficient claims. (*See* Ex. F.) The same is true of IPPs' cited cases that purportedly support the sufficiency of their antitrust intrastate commerce pleading. (*See* Ex. G.) IPPs here do not (and cannot) allege that, e.g., Defendants committed conspiratorial conduct, distributed or sold wire harnesses and/or caused substantial effects on a Plaintiff's in-state business operations, in these states. (*See* Exs. F, G.) Their claims are therefore legally deficient, and should be dismissed.

### F.   IPPs Cannot Salvage Their State Consumer Protection Claims By Ignoring Or Misstating Relevant State Case Law

No Arkansas appellate court has adopted the IPPs' reading of the Arkansas Act ("ADTPA"). Rather, in *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005), which IPPs ignore, the Arkansas Supreme Court held that "[w]here the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA." Similarly, IPPs' suggestion that this Court should not follow precedent *from this District* in interpreting Florida's Act ("FDUTPA") is meritless. This District correctly noted in *Packaged Ice*, 779 F. Supp. 2d at 665, that the Florida cases on which *Processed Eggs* relied do not address the FDUTPA's pleading standard.[23]   Finally, IPPs' claim that the mere invocation of "gross disparity" (Opp. at 22) can sustain a claim under New Mexico's Act is wrong. In cases where gross disparity has been adequately alleged, including *TFT-LCD* and *Processed Eggs*, the plaintiffs specifically alleged the amount of the overcharge. *TFT-LCD*, 586 F. Supp. 2d at 1127;

---

[22] In fact, *Kaufman v. Sirius XM Radio, Inc.*, expressly states that the analysis under NY's consumer protection law "does not turn on the residency of the parties" but "on the lack of any plausible claim that [plaintiffs] engaged in a transaction with [defendant] within New York." 2012 WL 1109397, at *2 n.1 (2d Cir. 2012) (internal quotations omitted).

[23] Although *Galstaldi v. Sunvest Comtys.*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009), relied on *Davis v. Powertel*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 1st Dist. 2000), for the proposition that the FDUTPA does not require particularized allegations of fraud, *Davis* says no such thing. *Davis* held that plaintiffs need not prove reliance, but must show that the practice was likely to deceive a consumer acting reasonably in the same circumstances. *Davis*, 766 So. 2d at 974.

*Processed Eggs*, 851 F. Supp. 2d at 906; *In re New Motor Vehicles (NMV) Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 196 (D. Me. 2004). IPPs assert no such allegations. Thus, the IPPs' Arkansas, Florida, and New Mexico consumer protection law claims fail.

## V.    IPPS' UNJUST ENRICHMENT CLAIMS FAIL

IPPs' unjust enrichment claims are nothing more than an attempt to improperly use a common law claim to evade restrictions on their state antitrust and consumer protection claims. The Court must decide if *these particular IPPs* should be permitted to recover from Defendants where (1) federal and state legislative and policy choices indicate they *should not*;[24] (2) IPPs received the goods for which they paid (Defs. Br. at 35-36; Ex. H); (3) as required in certain states, there is no direct connection between IPPs and Defendants, through contract or otherwise (Defs. Br. at 36; Ex. I); and (4) IPPs have not satisfied applicable pleading requirements in certain states.[25] The answer is no, and IPPs' unjust enrichment claims must be dismissed.

---

[24] A state's adoption of *Illinois Brick*, or other limitation on indirect purchaser recovery, requires dismissal of unjust enrichment claims premised on the same conduct. (*See* Defs. Br. at 32-34.) While IPPs mischaracterize Defendants' argument and ignore the precedent cited by Defendants, they do concede that their unjust enrichment claims "are based on the same facts" as, and are therefore tethered to, an underlying antitrust or consumer protection claim. (Opp. at 33.) Thus, where IPPs' underlying state claims are dismissed, their unjust enrichment claims related to those states also fail. *See NMV*, 350 F. Supp. 2d at 209-10; s*ee also Digital Music*, 812 F. Supp. 2d at 413; *Stutzle v. Rhonepoulenc S.A.*, 2003 WL 22250424, at *2 (Pa. Com. Pl. Sept. 26, 2003); *In re Microsoft Corp. Antitrust Litig.*, 241 F. Supp. 2d 563, 565 (D. Md. 2003); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001)). Any other result would undermine the state's conscious decision to disallow indirect purchaser recovery. The cases that the IPPs cite on this point do *not* support such a departure. *Williams Electronic Games v. Garrity*, 366 F.3d 569, 576-78 (7th Cir. 2004), supports Defendants' argument that, in many states, restitution is a remedy, not a cause of action, and *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 537 (2002), and *Fond Du Lac*, 2012 WL 3841397, at *6, do not address whether an indirect purchaser's unjust enrichment claim would survive dismissal of the underlying claim.

[25] (*See* Defs. Br. at 36-38 (addressing special pleading requirements in specific states); Ex. J (same); Defs. Br. at 31-32 (addressing ADs' failure to adequately plead unjust enrichment claims in any state); Opp. at 32 & n.32 (ADs' concession that they do not bring unjust enrichment claims under federal common law and twenty states).)

**VI.    IPPS HAVE NOT ADEQUATELY PLED AN INJUNCTION CLAIM**

IPPs rely solely on speculation about alleged "ongoing harm" from some Defendants' admitted but terminated misconduct to avoid dismissal of their injunctive relief claim.  But that speculation only highlights IPPs' failure to plead any *facts* to support their assertion that the "continuing conspiracy" or "significant risk" that such misconduct will resume requires such relief, and to identify any "ongoing *conduct*" they seek to enjoin.  Contrary to IPPs' claim (Opp. at 39), at least some of the Defendants' ongoing antitrust compliance plans and efforts have been publicly disclosed.   *See*, *e.g.*, JFTC Order ¶¶ 3(1)-(4) (Yazaki and Fujikura will adopt compliance measures);[26] Nov. 14, 2011 Sentencing Hr'g Tr., at 25:11-26:7, *U.S. v. Furukawa Elec. Co.*, No. 11-cr-20612-GCS, ECF No. 12 (E.D. Mich. Nov. 16, 2011) (noting Furukawa's efforts to "essentially self-police itself and to cooperate with authorities").  IPPs' failure to plead facts that plausibly suggest a real or immediate threat that Defendants' alleged misconduct will continue or resume is fatal to their injunctive relief claims.

## CONCLUSION

For all the foregoing reasons and those set forth in Defendants' opening brief,[27] the IPPs' complaints should be dismissed.

---

[26] *See* http://www.jftc.go.jp/en/pressreleases/archives/individual-000462.html; and http://www.jftc.go.jp/en/pressreleases/uploads/2012_Jan_19.pdf (English versions).

[27] Due to the space constraints for this reply brief, Defendants have focused on the key areas in dispute.  The absence of a response to any particular IPP argument is not, and should not be interpreted as, a concession of the argument.

Respectfully submitted,

October 26, 2012                By:    LANE POWELL PC

*/s/Larry S. Gangnes*  (w/consent)
Larry S. Gangnes
Connor B. Shively
LANE POWELL PC
1420 Fifth Ave., Suite 4100
Seattle, WA 98101-2338
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
LANE POWELL PC
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
yamaguchim@lanepowell.com
sandsd@lanepowell.com

Irwin Alterman (P10147)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone:  (248)528-1111
irwin.alterman@kkue.com

*Attorneys for Defendants American Furukawa,*
*Inc.; and Furukawa Electric Co., Ltd.*

WILMER CUTLER PICKERING HALE AND DORR LLP

October 26, 2012                By:

_/s/Steven F. Cherry_  (w/consent)
Steven F. Cherry
David P. Donovan
Stephanie K. Wood
Elizabeth Martin
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
stephanie.wood@wilmerhale.com
ellie.martin@wilmerhale.com

Karen D. Stringer
Heather Price
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6406
Fax: (617) 526-5000
karen.stringer@wilmerhale.com
heather.price@wilmerhale.com

_Attorneys for Defendants DENSO International America, Inc. and DENSO Corporation_

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:  (248) 213-2551
steve_zarowny@denso-diam.com

_Attorney for Defendant DENSO International America, Inc._

KERR, RUSSELL AND WEBER, PLC

October 26, 2012          By:   _/s/William A. Sankbeil_  (w/consent)
                                William A. Sankbeil (P19882)
                                Joanne Geha Swanson (P33594)
                                Matthew L. Powell (P69186)
                                500 Woodward Avenue, Suite 2500
                                KERR, RUSSELL AND WEBER, PLC
                                Detroit, MI 48226
                                Telephone: (313) 961-0200
                                Fax: (313) 961-0388
                                wsankbeil@kerr-russell.com
                                jswanson@kerr-russell.com
                                mpowell@kerr-russel.com

                                James L. Cooper
                                Sonia Kuester Pfaffenroth
                                Laura Cofer Taylor
                                ARNOLD & PORTER LLP
                                555 Twelfth Street NW
                                Washington, DC 20004
                                Telephone: (202) 942-5014
                                Fax: (202) 942-5999
                                james.cooper@aporter.com
                                sonia.pfaffenroth@aporter.com
                                laura.taylor@aporter.com

                                *Attorneys for Defendants Fujikura America, Inc.*
                                *and*
                                *Fujikura Ltd.*

SMITH, GAMBRELL & RUSSELL, LLP

October 26, 2012        By:   */s/Wm. Parker Sanders*  (w/consent)
                              Wm. Parker Sanders (Georgia Bar No. 626020)
                              SMITH, GAMBRELL & RUSSELL, LLP
                              Promenade II, Suite 3100
                              1230 Peachtree Street, N.E.
                              Atlanta, Georgia 30309
                              Telephone: (404) 815-3684
                              psanders@sgrlaw.com

                              Jeffrey G. Heuer (P14925)
                              Peter M. Falkenstein (P61375)
                              JAFFE, RAITT, HEUER & WEISS, P.C.
                              27777 Franklin Rd., Ste. 2500
                              Southfield, MI 48034
                              Telephone: (248) 351-3000
                              jheuer@jaffelaw.com
                              pfalkenstein@jaffelaw.com

                              *Attorney for Defendant Kyungshin-Lear Sales*
                              *and*
                              *Engineering, LLC*

                              DYKEMA GOSSETT PLLC

October 26, 2012        By:   */s/Howard B. Iwrey*  (w/consent)
                              Howard B. Iwrey (P39635)
                              DYKEMA GOSSETT PLLC
                              39577 Woodward Avenue, Suite 300
                              Bloomfield Hills, MI 48304
                              (248) 203-0526 – Telephone
                              hiwrey@dykema.com

                              Andrew S. Marovitz
                              Britt M. Miller
                              MAYER BROWN LLP
                              71 S. Wacker Drive
                              Chicago, IL 60606
                              Telephone: (312) 782-0600
                              Fax: (312) 701-7711
                              amarovitz@mayerbrown.com
                              bmiller@mayerbrown.com

                              *Attorneys for Defendant Lear Corporation*

O'MELVENY & MYERS LLP

October 26, 2012                    By:    */s/Michael F. Tubach*  (w/consent)
                                           Michael F. Tubach
                                           O'MELVENY & MYERS LLP
                                           Two Embarcadero Center, 28th Floor
                                           San Francisco, CA 94111
                                           Telephone: (415) 984-8700
                                           Fax: (415) 984-8701
                                           Mtubach@omm.com

                                           Michael R. Turco (P48705)
                                           BROOKS WILKINS SHARKEY & TURCO
                                           PLLC
                                           401 South Old Woodward, Suite 400
                                           Birmingham, MI 48009
                                           Telephone: (248) 971-1713
                                           Fax: (248) 971-1801
                                           turco@bwst-law.com

                                           *Attorneys for Defendants Leoni AG, Leoni Wire
                                           Inc., Leoni Wiring Systems, Inc., Leoni Kabel
                                           GmbH, and Leonische Holding Inc.*

LATHAM & WATKINS LLP

October 26, 2012                    By:   */s/ Marguerite M. Sullivan*
                                          Marguerite M. Sullivan
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street NW, Suite 1000
                                          Washington, DC 20004
                                          Telephone: (202) 637-2200
                                          Fax: (202) 637-2201
                                          maggy.sullivan@lw.com

                                          Daniel M. Wall
                                          LATHAM & WATKINS LLP
                                          505 Montgomery Street, Suite 2000
                                          San Francisco, CA 94111
                                          Telephone: (415) 395-0600
                                          Fax: (415) 395-8095
                                          dan.wall@lw.com

                                          William H. Horton (P31567)
                                          GIARMARCO, MULLINS & HORTON, P.C.
                                          101 West Big Beaver Road, Tenth Floor
                                          Troy, MI 48084-5280
                                          Telephone: 248-457-7060
                                          bhorton@gmhlaw.com

                                          *Attorneys for Defendants Sumitomo Electric
                                          Industries, Ltd.; Sumitomo Electric Wintec
                                          America, Inc.; Sumitomo Wiring Systems, Ltd.;
                                          Sumitomo Electric Wiring Systems, Inc.; K&S
                                          Wiring Systems, Inc.; and Sumitomo Wiring
                                          Systems (U.S.A.) Inc.*

COVINGTON & BURLING LLP

October 26, 2012                    By:    */s/Michael J. Fanelli*  (w/consent)
                                           Michael J. Fanelli
                                           COVINGTON & BURLING LLP
                                           1201 Pennsylvania Ave., NW
                                           Washington, D.C. 20004
                                           Telephone: (202) 662-6000
                                           Fax: (202) 662-5383
                                           Mfanelli@cov.com

                                           Anita F. Stork
                                           COVINGTON & BURLING LLP
                                           One Front Street
                                           35th Floor
                                           San Francisco, CA 94111
                                           Telephone: (415) 591-6000
                                           Fax: (415) 955-6550
                                           astork@cov.com

                                           *Attorneys for Defendant S-Y Systems*
                                           *Technologies*
                                           *Europe GmbH*

                                           BUTZEL LONG

October 26, 2012                    By:    */s/David F. DuMouchel*  (w/consent)
                                           David F. DuMouchel (P25658)
                                           George B. Donnini (P66793)
                                           BUTZEL LONG
                                           150 West Jefferson, Suite 100
                                           Detroit, MI 48226
                                           Telephone: (313)225-7000
                                           dumouchd@butzel.com
                                           donnini@butzel.com

                                           W. Todd Miller
                                           BAKER & MILLER PLLC
                                           2401 Pennsylvania Ave., NW, Suite 300
                                           Washington, DC 20037
                                           Telephone: (202)663-7820
                                           TMiller@bakerandmiller.com

                                           *Attorneys for Defendants Tokai Rika Co., Ltd.*
                                           *and  TRAM, Inc.*

JONES DAY

October 26, 2012                    By:   */s/John M. Majoras* (w/consent)
                                          John M. Majoras
                                          Carmen G. McLean
                                          JONES DAY
                                          51 Louisiana Ave. N.W.
                                          Washington, D.C. 20001-2113
                                          (202) 879-3939
                                          (202) 626-1700 (facsimile)
                                          jmmajoras@jonesday.com
                                          cgmclean@jonesday.com

                                          Michelle K. Fischer
                                          Stephen J. Squeri
                                          JONES DAY
                                          North Point
                                          901 Lakeside Avenue
                                          Cleveland, OH 44114
                                          (216) 586-3939
                                          (216) 579-0212 (facsimile)
                                          mfischer@jonesday.com
                                          sjsqueri@jonesday.com

                                          *Attorneys for Defendants Yazaki Corporation*
                                          *and Yazaki North America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2012, I caused the foregoing REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END-PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: October 26, 2012        By: _/s/Marguerite M. Sullivan_____
                                Marguerite M. Sullivan

DC\2310418