**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                         MASTER FILE NO. 12-md-02311


_____

In Re: Wire Harness Cases                    HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Actions                                   2:12-cv-00102
End-Payor Actions                                   2:12-cv-00103
_____/

**OPINION AND ORDER DENYING KYUNGSHIN-LEAR'S**
**MOTION TO DISMISS ALL COMPLAINTS**

Before the Court is Defendant Kyungshin-Lear's Motion to Dismiss all

Complaints (Case No. 12-02311, Doc. No. 227). In support of its Motion, Kyungshin-

Lear Sales and Engineering, LLC ("KL Sales") asserts that Direct Purchaser Plaintiffs

("DPPs"), Automobile Dealer Plaintiffs ("ADPs') and End-Payor Plaintiffs (EPPs") failed

to set forth sufficient facts to meet their pleading requirements under Rule 12(b)(6).

After the briefing was completed, DPPs filed Notice of Voluntary Dismissal (Case No.

12-00101, Doc. No. 74). Accordingly, the Court limits its consideration to the

arguments advanced relative to Automobile Dealers' Consolidated Amended Class

Action Complaint (Case No. 12-02311, Doc. No. 85), and End-Payors' Corrected

Consolidated Amended Class Action Complaint (Case No. 12-02311, Doc. No. 227,

Doc. No. 174).  For the reasons that follow, the motion is **DENIED**.

## I.  RELEVANT FACTS

Both ADPs and EPPs (collective "Indirect Purchaser Plaintiffs" or "IPPs") include

the following allegations, relevant to KL Sales, in their complaints.

> Defendant Lear Corp. is a Delaware corporation with its principal place of
> business in Southfield, Michigan. Defendant Lear – directly and/or through
> its subsidiaries, which it wholly owned and/or controlled – manufactured,
> marketed and/or sold Automotive Wire Harness Systems that were
> purchased throughout the United States, including in this district, during
> the Class Period.

(Case No. 12-02311, Doc. No. 85 at ¶ 98, Doc. No. 174 at ¶ 93).

> Next, Indirect Purchaser Plaintiffs allege:

> Defendant Kyungshin-Lear Sales and Engineering, LLC is a Delaware
> corporation with its principal place of business in Selma, Alabama. It is a
> joint venture between Defendant Lear Corporation and Kyungshin
> Corporation of South Korea. Defendant Kyungshin-Lear Sales and
> Engineering, LLC manufactured, marketed and/or sold Automotive Wire
> Harness Systems that were purchased throughout the United States,
> including in this district, during the Class Period.

(Case No. 12-02311, Doc. No. 85 at ¶ 99, Doc. No. 174 at ¶ 94).   The IPPs refer to

Lear Corporation and KL Sales collectively as Lear.  (Case No. 12-02311, Doc. No. 85

at ¶ 100, Doc. No. 174 at ¶ 95).

> Finally, IPPs allege:

> Defendant Lear Corporation filed for Chapter 11 bankruptcy protection on
> July 7, 2009. After their (sic) emergence from Chapter 11 bankruptcy
> proceedings on November 9, 2009, Lear Corporation continued to sell
> Automotive Wire Harness Systems pursuant to and as part of its
> participation in furtherance of the conspiracy alleged herein. From and
> after November 2009, Lear Corporation had significant Automotive Wire
> Harness Systems sales in the United States at supra-competitive prices.
> In 2010 alone, Lear Corporation had $2.5593 billion in total sales in its
> electric power and management systems, which includes significant sales

2

for Automotive Wire Harness Systems in the United States pursuant to
the conspiracy hereinafter alleged.

(Case No. 12-02311, Doc. No. 85 at ¶ 10194, Doc. No. 174 at 96).

In addition to these specific allegations, IPPs advance allegations regarding all
Defendants.  Among the relevant allegations are:  Defendants' status as co-
conspirators  (Case No. 12-02311, Doc. No. 85 at ¶ 1, Doc. No. 174 at ¶ 1);
Defendants' agreements with other manufacturers of wire harnesses and related
products to fix prices and rig bids (Case No. 12-02311, Doc. No. 85 at ¶¶ 1, 5, Doc. No.
174 at ¶¶ 1, 5,7 94); the time frame of the conspiracy (Case No. 12-02311, Doc. No. 85
at ¶¶ 2, 245, Doc. No. 174 at ¶¶ 2, 221); market conditions conducive to collusion
(Case No. 12-02311, Doc. No. 85 at ¶¶ 152-167, Doc. No. 174 at ¶¶ 151-163); and
Lear's market share (Case No. 12-02311, Doc. No. 85 at ¶¶ 146, 165, Doc. No. 174 at
¶¶ 147, 162).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a
complaint which fails "to state a claim upon which relief can be granted."  To survive a
motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must show
that his complaint alleges facts which, if proven, would entitle him to relief.  First Am.
Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007).  "A complaint must contain
either direct or inferential allegations with respect to all material elements necessary to
sustain a recovery under some viable legal theory."  Weiner v. Klais & Co., 108 F.3d 86,
88 (6th Cir. 1997).  When reviewing a motion to dismiss,  the Court "must construe the
complaint in the light most favorable to the plaintiff, accept all factual allegations as

3

true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Twombly, the Supreme Court considered the pleading requirements needed to withstand a motion to dismiss relative to a Section 1 Sherman Act claim.  It held that the complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556.

## III.  ANALYSIS

Before the Court considers the specific arguments advanced by KL Sales, the Court notes that it addressed the sufficiency of the allegations of IPPs' complaints at length in resolving Collective Defendants Motion to Dismiss the IPPs' complaints. Consequently, the Court limits its discussion to the specific arguments advanced in this motion.

4

According to KL Sales, it is "a peripheral outlier." (Doc. No. 227 at 1). Its status is reflected by Indirect Purchaser Plaintiffs lumping of KL Sales into allegations of overt acts by other Defendants, a technique that renders the allegations against it conclusive, ambiguous, and generic.

Although KL Sales asserts that it has no idea as to what it is accused of having done, its assertion is undermined by a view of the complaints in their entirety. This Court notes it must read the complaints as a whole. Cont'l Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699 (1962). IPPs have alleged the existence of explicit agreements to restrain trade, market conditions open to collusion, and the relative strength of Defendants in the marketplace. These allegations demonstrate that Defendants were not chosen "from a yellow page directory of an industry." (See Case No. 12-00103, Doc. No. 83). Here, multiple Defendants have pleaded guilty and admitted to meeting and agreeing to allocate supply, rig bids and fix prices in the United States. They admitted to carrying out those agreements. The structure of the wire harness industry renders it susceptible to collusion, and the complaints contain allegations demonstrating Defendants' opportunity to meet and collude. In addition, government investigations are ongoing. These allegations advance a claim against KL Sales that it participated in a conspiracy "in restrain of trade or commerce." 15 U.S.C. § 1.

Dismissal is not required merely because Plaintiffs did not name each Defendant in the allegations pleaded in support of their Sherman Act claim. Compare In In re Elevator Antitrust Litig., 502 F.3d 47, 52 (2nd Cir. 2007) (dismissing complaint because the plaintiffs' complaint lacked a sufficient factual basis to use apparent, but unproven

5

misconduct in Europe to infer a worldwide conspiracy").  KL Sales' reliance on <u>RSM</u> <u>Prod. Corp. v. Petroleos de Venezuela Societa Amonima (PDVSA)</u>, 338 F. Supp. 2d 1208, 1216 (D. Colo. 2004), as support for its position is misplaced.  In that case, the only allegation about the defendant was that it was the wholly-owed U.S. marketing arm of PDVSA.  Here, IPPs identify KL Sales, and all Defendants as entities that manufacture, market, and sell Wire Harness Systems throughout the United States; (Doc. No. 85 at ¶ 4; Doc. No. 174 at ¶ 4), and allege that KL Sales and all Defendants "agreed, combined, and conspired to inflate, fix, raise, maintain, or artificially stabilize prices" and allocate markets.  (Doc. No. 85 at ¶¶ 5, 256; Doc. No. 174 at ¶¶ 5, 232).

Even though neither Lear nor KL Sales has pleaded guilty, IPPs have included allegations that render KP Sales' involvement plausible when viewed in light of the allegations of  market conditions that show a concentration of market shares, high barriers to entry, and the capability of producing products for use in any vehicle, as well as opportunities to conspire at auto and industry trade.  In sum, the complaints satisfy <u>Twombly</u>.

## IV.  CONCLUSION

For the reasons stated above, KL Sales' motion is **DENIED**.

**IT IS SO ORDERED.**

<u>s/Marianne O. Battani</u>
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date:  <u>June 6, 2013</u>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

<u>s/Bernadette M. Thebolt</u>
Case Manager