U0NITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                               MASTER FILE NO. 12-md-02311

_____

In Re: Wire Harness Cases                          HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Actions                                 2:12-cv-00102
End-Payor Actions                                  2:12-cv-00103
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
LEONI AG, LEONI KABEL GMBH, LEONI WIRE INC., LEONI WIRING
SYSTEMS, INC., AND LEONISHCHE HOLDING INC.'S MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS**

Before the Court is Defendants Leoni AG, Leoni Kabel, GmbH, Leoni Wire Inc., Leoni Wiring Systems, Inc., and Leonishche Holding Inc.'s (collectively "Leoni Defendants") request for dismissal of Plaintiffs' complaints for failure to state a claim and for dismissal of Leoni AG and Leoni Kabel GMBH on personal jurisdiction grounds (Case No. 12-02311, Doc. No. 234). Before oral argument, the parties stipulated to the dismissal of Leoni Kabel GmbH, which is a subsidiary of Leoni AG. In addition, the Direct Purchaser Plaintiffs stipulated to the dismissal of Leoni AG. (See Case No. 12-00101, Doc. No. 74). The Court heard oral argument on the motion for failure to state a claim and whether the Automobile Dealer Plaintiffs' ("ADPs") and the End-Payor Plaintiffs' ("EPPs") collectively ("Indirect Purchaser Plaintiffs" or "IPPs"), can proceed

with their claims against Leoni AG. At the conclusion of the hearing, the Court took this matter under advisement. For the reasons that follow, Defendants' motion is **GRANTED in part and DENIED in part**.

## I. RELEVANT FACTS

Both Automobile Dealer Plaintiffs and End-Payor Plaintiffs bring their actions under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). They also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violation of the laws of various states.

Defendants are manufacturers or sellers of Wire Harness Systems ("WHS"), which are the "central nervous systems" of automotive vehicles and consist of wires or cables and data circuits that run throughout the vehicles. (Doc. No. 85 at ¶ 130; Doc. No. 174 at ¶ 124). The Leoni Defendants control 6% of the global market for WHS. (Doc. No. 85 at ¶¶ 02-102-107; Doc. No. 174 at 162).

According to Leoni Defendants, the Leoni group is a multi-national enterprise based in Germany that manufactures and sells wire harnesses and other electrical productS around the world. Leoni AG is a German holding company for the Leoni group worldwide. It does not manufacture or sell any products. (Case No. 12-02311, Doc. No. 234, Ex. B, Decl. of Robert Steiner, VP Corporate Finance & Insurance for Leoni AG at ¶ 4). Leoni AG is the indirect 100% shareholder of its United States-based

holding company Leonische Holding Inc., which is the direct 100% shareholder of Leoni Wiring Systems, Inc. and Leoni Wire Inc. (Id.) Leoni AG provides administrative support services, such as cash pooling services and information technology support to Leoni group entities throughout the world. (Id. at ¶ 5). In connection with internal functions such as preparation of Leoni AG's consolidated balance sheet and financial statements, Leoni AG employees occasionally visit the United States. (Id.) Leoni AG shares other information technology tools with its U.S. subsidiaries and has licensed them to use the name Leoni. (Id.)

Leoni is not incorporated in the U.S., has not conducted business in the U.S., does not own property in the U.S. It maintains two bank accounts in the U.S. to provide cash pooling services to its U.S. subsidiaries to ensure favorable banking terms. (Id. at ¶¶ 6-10). Each U.S. subsidiary maintains separate bank accounts in the U.S. to transact business. (Id. at ¶ 10) Leoni AG does not exercise control over the day-to-day business of the other Leoni Defendants; it does not share its financial records with the Leoni Defendants except for public disclosures of financial performance required for publicly-traded companies on the German stock exchange. (Id. at ¶ 14). Finally, Steiner declares that Leoni AG personnel do not hold management responsibilities with Leoni Defendants, and after October 2009 individual Leoni AG directors have not held positions on the boards of directors of the U.S. subsidiaries. (Id. at ¶ 15).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show

that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

  Before its answer is filed, a defendant may move for its dismissal based on lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

  If a district court rules on the motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid

4

of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  The district court is granted considerable discretion in this decision and will be reversed only for abuse of discretion.  Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Mich. Nat'l Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989).  The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal.  Serras, 875 F.2d at 1214.  Where, as is the case here, the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facia* showing of jurisdiction in order to avoid dismissal, Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

In considering 12(b)(2) motions, the court does not weigh the controverting assertions of the moving party due to its interest in "prevent[ing] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."  CompuServe, Inc., 89 F.3d at 1262 (quoting Theunissen, 935 F.2d at 1459).

## III. ANALYSIS

### A. Sufficiency of the Pleadings

According to Leoni Defendants, ADPs and EPPs have failed to state a claim against them, and they must be dismissed.  They raise several arguments in support of

their request. Because the Court addressed the merits of the arguments in resolving Collective Defendants' motions to dismiss the Direct Purchaser Plaintiffs' complaint and the Indirect Purchasers Plaintiffs' complaint, the Court denies the request and directs its attention to whether it may exercise personal jurisdiction over Leoni AG.

### B. Personal Jurisdiction

The Supreme Court has held that in order to subject a nonresident defendant to personal jurisdiction, due process requires that he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exits. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

When "a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States, and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." Med. Mut. v. deSoto, 245 F.3d 561, 567-568 (6th Cir. 2001). For federal antitrust claims, 15 U.S.C. § 22 authorizes service of process over an antitrust defendant "wherever it may be found." Here, personal jurisdiction exists provided Leoni AG has "sufficient minimum contacts with the United States" to satisfy the due process requirements of the Fifth

6

Amendment. Med. Mut. of Ohio, 245 F.3d at 566–67. "This inquiry parallels the more traditional personal-jurisdiction analysis under which a defendant must have 'minimum contacts' " with the forum state pursuant to the state's long-arm statute. Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449-50 (6th Cir. 2012) (citing Med. Mut. of Ohio, 245 F.3d at 566–67).

### 1. Minimum Contacts

A party is subject to the personal jurisdiction of the Court through either specific or general jurisdiction. See J Mcintyre Machinery, Ltd. v. Nicastro, __U.S. __, 131 S. Ct. 2780, 2789 (2011). Whether general or specific jurisdiction exists turns on the nature of the defendant's contacts with the forum. IPPs argue that the allegations in this case support both.

### a. General jurisdiction

General jurisdiction is established when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006) (quoting Aristech Chem Int'l v. Acrylic Fabricators, 138 F.3d 624, 627 (6th Cir. 1998)). The law is clear that a court may exercise general jurisdiction over a foreign corporation in those circumstances where the court has jurisdiction over a subsidiary and the domestic subsidiary is a mere alter ego of the parent. Carrier Corp. v. Outokumpu Ojy, 673 F.3d 430, 450-51 (6th Cir. 2012). This circuit has adopted the alter-ego theory of personal jurisdiction, which "provides that a non-resident parent corporation is amenable to suit in the forum state if

7

the parent company **exerts so much control over the subsidiary** that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." Id. (quoting Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008) (emphasis added). Even viewing ADPs and EPPs' allegations in the light most favorable to them, they have insufficient support of their alter ego theory.

In Alexander Associates, Inc. v. FCMP, Inc., 10-12355, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012), the district court articulated the factors that allow a court to disregard separate corporate identities.

> Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

Id. at *18 (citations omitted).

In the absence of an alter ego relationship between Leoni AG and its U.S. subsidiaries, the Steiner declaration establishes there is no systematic and continuous contact with the U.S. Accordingly, the Court considers whether IPPs have met their burden to show the exercise of personal jurisdiction on that ground is justified.

Here, the overlap of board members and executives rests primarily with Leoni Wiring Systems Inc ("LWS") and a nonparty to the litigation, Leoni Bordnetz-Systeme GmbH. Indirect Purchaser Plaintiffs' reliance on intermingling between a party and nonparty to give credence to its alter ego theory relative to Leoni AG is misplaced. There is no evidence that the relationship between LWS and Leoni AG exceeded a

typical corporate relationship. Centralized research and development, purchasing, and logistical activities are not indicative. What is missing here is evidence that Leoni AG controlled its U.S. subsidiaries: that Leoni AG supervised management, controlled the budget, rendered decisions on a subsidiary's behalf, and invaded corporate boundaries. Consequently, the Court finds the factors articulated in Alexander Assoc. are not met.

IPPs rely on public filings that show Leoni AG manages the group. (Doc. No. 400, Burns Aff., Ex. H, 2006 Ann Rpt. at 20). Management, alone, is not a basis for disregarding separate corporate existence. The Court finds that IPPs have failed to meet their burden to show that the Court may exercise general jurisdiction over Leoni AG. Accordingly, the Court considers whether it may exercise specific jurisdiction over Leoni AG.

**b. Specific jurisdiction**

Specific jurisdiction subjects the defendant to actions in the forum arising out of or relating to the defendant's contacts with that forum. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally laid out in S'ern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401

F.2d at 381).

### i. Purposeful Availment

The first issue to be addressed relative to specific jurisdiction is whether Leoni AG "purposefully avail[ed] [itself] of the privilege of acting in the forum or causing a consequence in the forum." Mohasco, 401 F.2d at 381. Under the first prong, "purposeful availment" means that the defendant's "contacts proximately result from the actions by the defendant **himself** that create a 'substantial connection' with the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Id. at 475 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984); Helicopteros, 466 U.S. at 417). IPPs advance two theories to support jurisdiction: stream of commerce; and effects test. Each is discussed below.

Plaintiffs assert that Leoni AG availed itself of the laws of the U.S. by placing its products in the stream of commerce with the intent to reach the U.S. The stream of commerce theory, as articulated in Ashai Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987), fails to persuade the Court that the exercise of jurisdiction would satisfy due process. In J. McIntyre Mach., Ltd., 131 S. Ct. at 2788 (considering the application of agency theory in the jurisdictional context to support the exercise of general jurisdiction), the Supreme Court expounded on the stream of

commerce basis to show purposeful availment.

> This Court has stated that a defendant's placing goods into the stream of commerce "with the expectation that they will be purchased by consumers within the forum State" may indicate purposeful availment. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (finding that expectation lacking). But that statement does not amend the general rule of personal jurisdiction. It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum--itself an unexceptional proposition-as where manufacturers or distributors "seek to serve" a given State's market. Id., at 295, 100 S.Ct. 559. The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must "purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson[ v. Denckla], supra, [357 U.S. 235] at 253, 78 S.Ct. 1228 R1958)1; Insurance Cor.. of Ireland ltd. v. Com a nie des Bauxites de Guinee, supra, [456 U.S. 694] at 704-705, 102 S.Ct. 2099 [(1987)]("[A]ctions of the defendant may amount to a legal submission to the jurisdiction of the court"). Sometimes a defendant does so by sending its goods rather than its agents. The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

Id. (Kennedy, J., plurality opinion). Although the four justice plurality opinion is not binding law, this Court is persuaded that the absence of any allegations that Leoni AG targeted consumers in the U.S. plays a key role in the personal jurisdiction analysis. Nor could Leoni AG have targeted customers in the United States inasmuch as it is not involved in the manufacture or sales of WHS.

In the alternative, Indirect Purchaser Plaintiffs rely on the effects test set forth in Calder v. Jones, 465 U.S. 783 (1984), as a basis for jurisdiction. In Calder v. Jones, a

professional entertainer domiciled in California sued two *National Enquirer* reporters in California Superior Court for libel resulting from conduct that took place entirely in Florida.  The U.S. Supreme Court found that California courts could properly exercise personal jurisdiction over the defendants because the "the brunt of the harm . . . was suffered in California.  In sum, California was deemed to be the focal point both of the story and of the harm suffered.  Therefore, the Court concluded that jurisdiction over the reporters was proper in California based on the 'effects' of their Florida conduct in California."  Id. at 789.

To support the application of the Calder test, ADPs and EPPs argue that "Leoni fixed prices on products it sold in the U.S. and caused [them] to pay an inflated price for automobiles."  (Doc. No. 400 at 19).  ADPs and EPPs conclude that the conspiracy had an explicit geographical focus–the U.S., and their allegations are sufficient to meet the Calder effects test.

Notably, ADPs and EPPs have not even alleged that Leoni AG fixed prices.  Instead they allege the "Leoni group" marketed, designed, and sold wire harnesses with the specific intent that they be sold in the U.S."  (Doc. No. 400 at 18).  There is no basis for finding that Leoni AG purposefully availed itself itself of the privilege of causing a consequence of in this forum.

### *ii.  Arising from/Reasonableness*

Because Plaintiffs cannot satisfy the first prong of the Mohasco test, there is no need to analyze the other factors: whether Leoni AG's activities gave rise to Plaintiffs' causes of action, and whether it is reasonable to exercise personal jurisdiction over Leoni AG.   Lak, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1303 (6th Cir. 1989).

In sum, the Court declines to exercise personal jurisdiction over Leoni AG where Plaintiffs have not established a prima facie showing of purposeful availment or alter ego jurisdiction. Specifically, the claims here do not arise from Leoni AG's de minimis contacts with the U.S., and its activities do not constitute the kind of "minimum contacts" that the Supreme Court required each defendant have with the forum state in Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Inasmuch as Leoni AG has no physical connection to the U.S., the minimum contacts requirement cannot be met, and specific personal jurisdiction may not be applied.

## B.  Jurisdictional Discovery

Indirect Purchaser Plaintiffs ask the Court for jurisdictional discovery in the event the Court finds that the exercise of personal jurisdiction over Leoni AG is unwarranted. IPPs do not indicate what evidence they seek to discover.

Here, the Court finds there is no reasonable basis to expect that further discovery would reveal contacts sufficient to support personal jurisdiction. Chrysler Corp. v. Fedders Corp., 643 F.2d at 1240. In contrast to the fishing expedition sought by IPPs, it is undisputed that Leoni AG is a German holding company. To the extent that some business relationship exists between Leoni AG and other entities in the Leoni group, it cannot be used to infer involvement in the U.S. conspiracy. Such a slim basis for allowing jurisdictional discovery would undermine the rules regarding corporate structure. Here, the Court must assess whether Indirect Purchaser Plaintiffs might, through discovery, find evidence to support the exercise of personal jurisdiction. The Court does not find that discovery is warranted.

## IV. CONCLUSION

For the reasons stated above, the motion is **GRANTED in part**. Leoni AG is **DISMISSED**.

**IT IS SO ORDERED.**

                                                s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                UNITED STATES DISTRICT JUDGE

Date: June 6, 2013

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

                                                s/Bernadette M. Thebolt
                                                Case Manager