# U0NITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                                   MASTER FILE NO. 12-md-02311


_____

In Re: Wire Harness Cases                               HON. MARIANNE O. BATTANI


_____

THIS DOCUMENT RELATES TO:


Dealership Actions                                      2:12-cv-00102
End-Payor Actions                                       2:12-cv-00103
_____/

## OPINION AND ORDER GRANTING S-Y SYSTEMS TECHNOLOGIES EUROPE GMBH'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS FOR LACK OF PERSONAL JURISDICTION

Before the Court is Defendant S-Y Systems Technologies Europe GmbH's ("S-Y Europe") Motion to Dismiss the Consolidated Amended Class Action Complaints for Lack of Personal Jurisdiction (Case No. 12-02311, Doc. No. 235).  Before oral argument, the Direct Purchaser Plaintiffs voluntarily dismissed S-Y Europe.

The Court heard oral argument on the motion relative to the Automobile Dealer Plaintiffs' ("ADPs") the End-Payor Plaintiffs' ("EPPs") (collectively "Indirect Purchaser Plaintiffs" or "IPPs") complaints, and at the conclusion of the hearing, took this matter under advisement.  For the reasons that follow, Defendants' motion is **GRANTED**.

## I.  RELEVANT FACTS

In their respective complaints, the EPPs and ADPs allege that S-Y Europe "directly or through its subsidiaries, which it wholly owned or controlled. . .manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.   (Case No. 12-02311, Doc. No. 174 at ¶ 118; Doc. No. 85 at ¶ 115).  According to IPPs, the European Commission Competition Authority ("EC") conducted raids on S-Y Europe, seeking evidence as to whether S-Y Europe had "violated European Union antitrust rules that prohibit cartels and restrictive business practices."  (Doc. No. 85 at ¶ 170; Doc. No. 174 at ¶ 166).  S-Y Europe is cooperating with the EC antitrust investigators.   (Doc. No. 85 at ¶ 171; Doc. No. 174 at ¶ 167).

## II.  STANDARD OF REVIEW

Before its answer is filed, a defendant may move to dismiss for lack of personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists."  Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

If a district court rules on such a motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting

Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  The district court is granted considerable discretion in this decision and will be reversed only for abuse of discretion.  Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Mich. Nat'l Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989).  The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal.  Serras, 875 F.2d at 1214.  Where, as is the case here, the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facia* showing of jurisdiction in order to avoid dismissal, Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

In considering 12(b)(2) motions, the court does not weigh the controverting assertions of the moving party due to its interest in "prevent[ing] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."  CompuServe, Inc., 89 F.3d at 1262 (quoting Theunissen, 935 F.2d at 1459).

III.   **ANALYSIS**

   **A.  Personal Jurisdiction**

The Supreme Court has held that to subject a nonresident defendant to personal jurisdiction, due process requires that he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)

3

(quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)).  The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exits.  <u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883, 887 (6th Cir. 2002).

When "a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States, and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States."  <u>Med. Mut. v. deSoto</u>, 245 F.3d 561, 567-568 (6th Cir. 2001).  For federal antitrust claims, 15 U.S.C. § 22 authorizes service of process over an antitrust defendant "wherever it may be found."   Here, personal jurisdiction exists, provided S-Y Europe has "sufficient minimum contacts with the United States" to satisfy the due process requirements of the Fifth Amendment.  <u>Med. Mut. of Ohio</u>, 245 F.3d at 566–67.  "This inquiry parallels the more traditional personal-jurisdiction analysis under which a defendant must have 'minimum contacts' " with the forum state pursuant to the state's long-arm statute.  <u>Carrier Corp. v. Outokumpu Oyj</u>, 673 F.3d 430, 449-50 (6th Cir. 2012) (citing <u>Med. Mut. of Ohio</u>, 245 F.3d at 566–67).

### 1.  Minimum Contacts

A party is subject to the personal jurisdiction of the Court through either specific or general jurisdiction.  <u>See</u> <u>J Mcintyre Machinery, Ltd. v. Nicastro</u>, __U.S. __, 131 S. Ct. 2780, 2789 (2011).  Whether general or specific jurisdiction exists turns on the

4

nature of the defendant's contacts with the forum.  <u>Bird v. Parsons</u>, 289 F.3d 865, 873 (6th Cir. 2002).

Because IPPs have not argued the existence of general jurisdiction, the Court limits its discussion to whether it may exercise specific jurisdiction over S-Y Europe. Specific jurisdiction subjects the defendant to actions in the forum arising out of or relating to the defendant's contacts with that forum.  <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 414 (1984).  In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally laid out in <u>S'ern Mach. Co. v. Mohasco Indus., Inc.</u>, 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.   Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

<u>Calphalon Corp. v. Rowlette</u>, 228 F.3d 718, 721 (6th Cir. 2000) (citing <u>Mohasco</u>, 401 F.2d at 381).

### a.  Purposeful Availment

The first issue to be addressed relative to specific jurisdiction is whether S-Y Europe "purposefully avail[ed] [itself] of the privilege of acting in the forum or causing a consequence in the forum." <u>Mohasco</u>, 401 F.2d at 381.  Indirect Purchaser Plaintiffs advance two grounds to establish purposeful availment.  First, IPPs argue that the factor is met because S-Y Europe was involved in a conspiracy designed to have an effect in the United States.  In the alternative, IPPs assert the Court may exercise personal

jurisdiction because S-Y Europe placed its products in the stream of commerce with intent to harm consumers in the United States. The Court discusses both below.

### i. Conspiracy Theory

In support of their assertion that S-Y Europe created a substantial connection with the United States, ADPs and EPPs rely on the conspiracy theory. According to Indirect Purchaser Plaintiffs, S-Y Europe participated in a conspiracy directly aimed at the United States and this District. In support of their position, they allege that S-Y Europe conspired to fix prices of wire harness products. Specifically,

> On February 24, 2010, the European Commission conducted searches at several companies that manufacture wiring harnesses for automotive purposes, including S-Y Systems Technologies Europe GmbH ("S-Y"), Regensburg, Germany. S-Y is a company in which Continental and the Japanese company Yazaki, a wiring harness manufacturer, each own 50%. The European Commission announced that it has indications that the companies in question have violated EU antitrust law.

(Case No. 12-02311, Doc. No. 391, Ex. F, Aff. of Warren T. Burns, Ex 1). Not only did a raid take place, Continental AG, now a 50% owner of S-Y Europe, acknowledged in its 2011 Annual Report that anticompetitive behavior occurred within an unnamed business unit and that additional violations could have occurred. (Id.)

Regardless of the entanglements of S-Y Europe and other Defendants, the Court has no basis for imputing the actions of one to another in analyzing jurisdiction in the absence of an explicit directive by the Sixth Circuit to do so. See Weather Underground, inc. v. Navigation Catalyst Sys., Inc., 688 F. Supp. 2d 693, 696 (E. D. Mich. 2009). Simply put, the Sixth Circuit has not endorsed the theory that sufficient minimum contacts to exercise personal jurisdiction may be based upon the acts of a co-

6

conspirator, performed in the forum in furtherance of the conspiracy, over a nonresident

that has no other contacts with the forum.  At most, in 1981, the Sixth Circuit

acknowledged the existence of the theory.  See Chrysler Corp. v. Fedders Corp., 643

F.2d 1229, 1236 (6th Cir. 1981), yet, over thirty years later, has not adopted it.

### ii.  Stream of Commerce

Next, Indirect Purchaser Plaintiffs assert that S-Y Europe availed itself of the laws

of the United States by placing its products in the stream of commerce with the intent to

reach the United States.  More specifically, S-Y Europe was created to take the strategic

lead with respect to BMW and Renault global programs.  According to IPPs, BMW sold

247,907 vehicles in the United States in 2011; it is the top luxury brand sold in the

United States.  (Case No. 12-02311, Doc. No. 391, Ex. 1).  IPPs conclude that these

facts demonstrate that S-Y Europe targeted the United States from Europe; therefore,

the Court may exercise personal jurisdiction over S-Y Europe.

The stream of commerce theory, relied upon by IPPs, as articulated in Ashai

Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987), does not support IPPs'

conclusion that the exercise of jurisdiction would satisfy due process.  In J. McIntyre

Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) (considering the application of

agency theory in the jurisdictional context to support the exercise of general jurisdiction),

the Supreme Court expounded on the stream of commerce basis for personal

jurisdiction.

> This Court has stated that a defendant's placing goods into the stream of
> commerce "with the expectation that they will be purchased by consumers
> within the forum State" may indicate purposeful availment. World-Wide
> Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 62

7

L.Ed.2d 490 (1980) (finding that expectation lacking).  But that statement does not amend the general rule of personal jurisdiction.  It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum--itself an unexceptional propo-sition--as where manufacturers or distributors "seek to serve" a given State's market.  Id., at 295, 100 S.Ct. 559.  The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign.  In other words, the defendant must "purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson[ v. Denckla], supra, [357 U.S. 235] at 253, 78 S.Ct. 1228 [(1958)]; Insurance Corp.[of Ireland, ltd. v. Compagnie des Bauxites de Guinee], supra, [456 U.S. 694] at 704-705, 102 S.Ct. 2099 [(1987)])("[A]ctions of the defendant may amount to a legal submission to the jurisdiction of the court").  Sometimes a defendant does so by sending its goods rather than its agents.  The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

Id. (Kennedy, J., plurality opinion).  Although the four justice plurality opinion is not binding law, this Court is persuaded that S-Y Europe's lack of targeting consumers in the United States plays a key role in the personal jurisdiction analysis.

Indirect Purchaser Plaintiffs' allegation that S-Y Europe sold price-fixed products to BMW shows at most that S-Y Europe could have predicted that its goods would reach the United States.  The inference is supported by IPPs' exhibits detailing the number of BMWs imported into the United States.  Nevertheless, neither the complaints nor the exhibits allege or evidence facts rising to the level of targeting.  Here, there is no suggestion that S-Y Europe controlled BMW's distribution, nor is there any suggestion that S-Y Europe cared where BMW sold its cars.  Therefore, no inference arises that S-Y Europe targeted the United States or that S-Y Europe sought the protection of the forum's laws or benefitted from them.

8

### 2.  Connection and Reasonableness

Because IPPs cannot satisfy the first prong of the <u>Mohasco</u> test, there is no need to analyze the other factors:  whether S-Y Europe's activities gave rise to Plaintiffs' causes of action, and whether it is reasonable to exercise personal jurisdiction over S-Y Europe.  Each element of the test "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."  <u>Lak, Inc. v. Deer Creek Enter.</u>, 885 F.2d 1293, 1303 (6th Cir. 1989).

### B.  Is Jurisdictional Discovery Warranted?

Indirect Purchaser Plaintiffs ask the Court for jurisdictional discovery in the event the Court finds that the exercise of personal jurisdiction over S-Y Europe is unwarranted. To support their request, IPPs assert that the cross-corporate entanglements that exist in this case involve disputed issues of fact, such that discovery is appropriate.  They add that communications between S-Y Europe and S-Y Systems Technologies, America, LLC ("S-Y America") may demonstrate the existence of a conspiracy.  Further, IPPs contend that there are unresolved questions of fact regarding the relationship between S-Y Europe and S-Y America relative to wire harness systems.

Here, the Court finds there is no reasonable basis for expecting that further discovery would reveal contacts sufficient to support personal jurisdiction.  <u>Chrysler Corp.</u>, 643 F.2d at 1240.  In contrast to the fishing expedition sought by IPPs, it is undisputed that S-Y Europe is a German limited liability company.  (Doc. No. 236, Decl. of Wolfgang Girod, Director of Finance and Control at ¶ 1).  According to the Declaration of Wolfgang Girod, the Director of Finance and Control of S-Y Europe, the company was

formed in 2001 as a joint venture between Siemens Automotive AG and Yazaki
Corporation.  (Doc. No. 236 at ¶ 2).  Each owned equal shares.  (Id.)  In 2008,
Continental Automotive GmbH acquired Siemens' ownership interest.  (Id.)  Moreover,
S-Y Europe is neither a parent nor a subsidiary of a Yazaki entity or S-Y America.  (Id. at
¶¶ 3, 4).  S-Y Europe is not licensed to do business in the United States, not
incorporated in the United States, and never had offices in the United States.  (Id. at ¶¶
8, 10, 11, 12).  It has never had manufacturing or sales facilities, either directly or
through subsidiaries, in the U.S.  (Id. at ¶¶ 9, 15).  It has never sold wire harness
systems or products for mass production of automobiles in the United States.  (Id. at ¶
6).  S-Y Europe does not own or lease real estate in the United States.  (Id. at ¶ 13). It
has never been sued in the United States, nor has it ever filed suit here.  (Id. at ¶ 14). It
owns no bank accounts in the United States and has not borrowed money in the United
States.  (Id. at ¶ 16).

To the extent that some business relationship exists between S-Y Europe and S-
Y America, it is an insufficient basis for inferring that S-Y Europe is involved in the
alleged conspiracy in the United States.  Such a slim basis for allowing jurisdiction
discovery would undermine the protections of corporate law and corporate formalities.
Even crediting IPPs' assertion that S-Y Europe was created to "work closely" with S-Y
America, and to support "one another on their respective customer programs," the Court
observes that the press release relied upon by IPPs was issued at the time the joint
venture was formed.  It suggests a vision or perhaps a plan, but provides no basis for
inferring S-Y Europe's involvement in a conspiracy here in the United States.  (Doc. No.
391, Ex. 1 at ¶ 10, Ex. G).

Here, the Court must assess whether Indirect Purchaser Plaintiffs might, through discovery, find evidence to support the exercise of personal jurisdiction. The Court does not find that discovery is warranted.

## IV.  CONCLUSION

For the reasons stated above, the motion is **GRANTED**.  S-Y Europe is **DISMISSED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date:  June 6, 2013

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager

11