**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                               MASTER FILE NO. 12-md-02311


_____

In Re: Wire Harness Cases                          HON. MARIANNE O. BATTANI


_____

THIS DOCUMENT RELATES TO:

Dealership Actions                                 2:12-cv-00102
End-Payor Actions                                  2:12-cv-00103

_____/

### OPINION AND ORDER DENYING GS ELECTECH DEFENDANTS' MOTION TO DISMISS THE AUTO-DEALER AND END-PAYOR COMPLAINTS

Before the Court is GS Electech Defendants' Motion to Dismiss the Auto-Dealer and End-Payor Complaints (Case No. 12-00102, Doc. No. 61; Case No. 12-00102, Doc. No. 72). The Court heard oral argument on December 6, 2012, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the motion is **DENIED**.

## I. FACTUAL BACKGROUND

Automobile Dealer Plaintiffs and End-Payor Plaintiffs (collectively "Indirect Purchaser Plaintiffs" or "IPPs") filed class actions against various Defendants under federal and state law based on Defendants' alleged conspiracy to rig bids, fix prices,

and allocate the market for automotive wire harness systems and related products. According to the complaints, Defendants are manufacturers or sellers of Wire Harness Systems ("WHS"), which are the "central nervous systems" of automotive vehicles and consist of wires or cables and data circuits that run throughout the vehicles.  (Case No. 12-02311, Doc. No. 85 at ¶ 130, Doc. No. 174 at ¶ 124).

GS Electech Defendants, including G.S. Electech, Inc. ("GSE"), G.S. Wiring Systems Inc. ("GS Wiring"), which is named as a Defendant only in the End-Payors' complaint, and G.S.W. Manufacturing, Inc. ("GSW"), assert that the complaints against them must be dismissed.  GS Wiring and GSW are incorporated in Ohio, are wholly "owned and controlled" subsidiaries of GSE, and manufacture, market, and sell automotive wire harness systems.   (Doc. No. 85 at ¶¶ 125-126; Doc. No. 174 at ¶¶ 119-120).  In addition to the allegations mentioning GSE, GS Wiring, and GSW specifically, the complaints also contain allegations relating to all Defendants.

Included in those allegations, Indirect Purchaser Plaintiffs assert that market conditions suggest the existence of a conspiracy.  For example, although costs remained steady, the prices for WHS increased.  (Doc. No. 85 at ¶¶ 152-155; Doc. No. 174 at ¶¶ 151-153).  In addition, market conditions make the WHS market "particularly attractive" to collusion, (Doc. No. 85 at ¶ 156; Doc. No. 174 at ¶ 154), given factors such as high start-up costs that hinder new entrants to business,(Doc. No. 85 at ¶ 158; Doc. No. 174 at ¶¶ 155-157), inelastic demand, (Doc. No. 85 at ¶¶ 161-163; Doc. No. 174 at ¶¶ 158-160), and a heavily concentrated market (Doc. No. 85 at ¶¶ 164-165; Doc. No. 174 at ¶¶ 161-162).  In addition to market conditions favorable to collusion, Defendants regularly attended industry events, which provided an opportunity to meet

"under the guise of legitimate business."  (Doc. No. 85 at ¶¶ 166-167; Doc. No. 174 at ¶ 163).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted."  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief.  First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007).  "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### III.  ANALYSIS

GS Electech Defendants raise various challenges to the sufficiency of the complaints.  Because the Court addressed several of the challenges in resolving the Collective Defendants' Motion to Dismiss the Indirect Purchasers' Complaints, it limits its discussion to those arguments specific to GS Electech Defendants.

#### A.  Plea Agreement

The parties disagree as to the import and scope of the plea agreement of GSE.  Although neither the plea nor the transcript of the hearing was attached to the complaints, the parties agrees that the GSE plea agreement may be considered by the Court for purposes of this motion.  See Rondigo, L.L.C. v. Twp of Richmond, 641 F.3d 673, 680-681 (6th Cir. 2011) (court may consider public records if referred to in the complaint and are central to its claims without converting a motion to dismiss to a motion for summary judgment) (citing Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)).

According to GS Electech Defendants, the guilty plea, entered into by GSE is limited to GSE and one unnamed company; it is limited to sales of one product--speed sensor wire assemblies--to one automaker customer; and the conspiracy only covers the period 2003 through 2010.  In contrast, the allegations in IPPs' complaints cover a longer period of time, from 2000 through 2010, and a greater number of participants, customers, and parts:  thirty-four supplier-participants; fifteen automakers; and thirteen unrelated auto parts.  Moreover, GSE admitted to being an assembler of speed sensor wire assemblies, not a manufacturer.  (See e.g. Case No. 12-00102, Doc. No. 61,

Exhibit A, ¶ 4(1)).  Based upon these differences, GS Electech Defendants conclude

that the plea cannot form the predicate for any claim of participation in a "global"

conspiracy.

The May 16, 2012, Guilty Plea and Sentencing Hearing, (see e.g. Case No. 12-

00102, Doc. No. 61, Ex. B), further supports their position.  At the hearing, counsel for

GSE stated on the record:

> available evidence neither indicates nor suggests that [GSE] was a party
> to any overarching wire harness conspiracy involving the companies
> which have been previously changed or have pled guilty in this Court,
> including Furukawa and Yazaki, and certain other major suppliers.  The
> government has not alleged and is not alleging that [GSE] was involved in
> that overarching conspiracy.  The plea agreement makes it clear that
> [GSE] was involved with only one other co-conspirator.  So it is a two
> company conspiracy.

Id.  The United States agreed that the statement was "consistent with the evidence."

(Id. at 6).

Although GSE did not plead guilty to a conspiracy as long lasting as the one

alleged by IPPs, the plea does not place a limit on what claims the IPPs may bring.

Plea agreements do not create the boundaries of civil litigation.  In re Packaged Ice

Antitrust Litig., 723 F. Supp. 2d 987, 1011 (E.D. Mich. 2010).  GSE admitted to

conspiring with a competitor involved in "the manufacture and sale of wire speed sensor

wire harness assemblies."  (Id. at 13).  Despite Defendants' characterization of GSE as

a mere "assembler," GSE admitted during the plea hearing that it was engaged in the

sale of speed sensor wire assemblies in the United States and elsewhere, and that it

manufactured and sold "speed sensor wire assemblies."  (Id. at 12).  Here GSE's guilty

plea demonstrates that it entered into an express agreement that existed to fix prices

and allocate customers in a market with conditions ripe for conspiratorial conduct.  The

factual allegations create "a reasonable expectation that discovery will reveal evidence

of illegal agreement" beyond the admissions of GSE.  Twombly, 550 U.S. at 556.

Accord In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 782 (N.D. Ohio

2011) (relying on "specific admissions" made during a governmental investigation that

supported the "existence of a conspiratorial agreement").  Accordingly, the guilty plea,

in and of itself, provides no basis for dismissing GS Electech Defendants, and the Court

turns to their alternate argument.

### B.  Piercing the Corporate Veil

Next, G.S. Electech Defendants contend that the complaints lack sufficient

factual allegations to attribute GSE's plea agreement to its subsidiaries.  They argue

that reliance on GSE's plea agreement to advance claims against GS Wiring and GSW,

is nothing more than guilt by association of affiliated corporate entities.

Under Michigan law, to pierce the corporate veil and hold the parent company

liable for acts of a subsidiary, the evidence must show there is "such a complete identity

between the defendant and the corporation as to suggest that one was simply the alter

ego of the other."  Pettaway v. McConaghy, 116 N.W.2d 789, 790 (Mich. 1962).  In the

alternative, "[t]here must be evidence that the use of the corporation was improper."

Mattner v. Jennaro & Assocs., Inc., No. 89-2366, 1991 WL 159452 at *3 (6th Cir. Aug.

20, 1991) (internal citation omitted) (applying Michigan law); accord Precision, Inc. v.

Kenco/Williams, Inc., 66 Fed. Appx. 1, 4 (6th Cir. 2003).

Here, IPPs have pleaded facts relating to GS Electech Defendants' corporate

affiliation.  Notably, GSE is alleged to have sold the price-fixed product in the United

States through its two subsidiaries, which GSE is alleged to have "controlled." (Case No. 12-02311, Doc. No. 85 at ¶¶ 16, 125; Doc. No. 174 at ¶¶ 16, 113). These allegations create an inference that GSW and GS Wire participated in the conspiracy aimed at the United States. Moreover, in the plea agreement, the subsidiaries are required to cooperate with the Department of Justice by producing documents in their control and providing their "directors, officers and employees. . .[for] interview and the provision of testimony in grand jury, trial, and other judicial proceedings." (See e.g. Case No. 12-00102, Doc. No. 61 at Ex. A at 9(a) and (b)). GE Electech Defendants' reading of the plea ignores the United States' agreement that it would not bring "further criminal charges against [GSE] or its subsidiaries for any act or offence committed before the date of this Plea Agreement that was taken in furtherance of an antitrust conspiracy involving the manufacture, assembly, or sale of speed sensor wire assemblies." (Id. at 12).

Because the complaints must be viewed as a whole, detailed allegations about the involvement of each Defendant are not needed. At this stage of the litigation, these allegations are sufficient to state a claim as to GS Electech Defendants. In addition to the allegations that GSE coordinated and controlled the activities of GS Electech Defendants, the IPPs have pointed to portions of the plea that create an inference supporting control. In reaching this conclusion, the Court relies on the analysis set forth in Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 446 (6th Cir. 2012), wherein the appellate court observed that it was not necessary to "delineate in the complaint the role each subsidiary played in the conspiracy." A court may look past corporate form when the complaint alleges that wholly owned and controlled subsidiaries were alter

egos of the parent corporation.  Bhd. of Locomotive Eng'rs v. Interstate Commerce

Comm'n, 909 F.2d 909, 914 (6th Cir. 1990).  Here IPPs have alleged GSE controlled

GS Wiring and GSW.  The allegations create an inference sufficient to permit

imputation of the conspiracy to these subsidiaries.

## IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** the motion.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date:   June 6, 2013

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon
all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager