# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 2:12-md-02311 Judge Marianne O. Battani Magistrate Judge Mona K. Majzoub |
| IN RE WIRE HARNESS SYSTEMS | : : | Case No. 2:12-cv-00103 |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | : : : | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" or "Settlement") is made and entered into this 5th day of August 2016 ("Execution Date") by and between Furukawa Electric Co., Ltd. and American Furukawa, Inc. (collectively, "Furukawa Defendants"), and End-Payor Plaintiffs Class Representatives (collectively, "End-Payor Plaintiffs"), both individually and on behalf of a class of end-payor indirect purchasers of Automotive Wire Harness Systems ("Settlement Class"), as more particularly defined in Paragraph 16 below.

WHEREAS, End-Payor Plaintiffs are prosecuting the above *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.), which includes *In re Automotive Wire Harness Systems*, Case No. 12- cv-00103 ("Action"), on their own behalf and on behalf of the Settlement Class against, among others, the Furukawa Defendants;

WHEREAS, End-Payor Plaintiffs allege that they were injured as a result of the Furukawa Defendants' participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Automotive Wire Harness Systems (as defined below) in violation of Section 1 of the Sherman Act and various state

antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Fourth Amended Consolidated Class Action Complaint in the Action (ECF No. 233);

WHEREAS, the Furukawa Defendants deny End-Payor Plaintiffs' allegations and have asserted defenses to End-Payor Plaintiffs' claims in the Action;

WHEREAS, arm's-length settlement negotiations have taken place over a protracted period of time between Settlement Class Counsel (as defined below) and counsel for the Furukawa Defendants, and this Agreement has been reached as a result of those negotiations;

WHEREAS, End-Payor Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims asserted in the Action against the Furukawa Defendants, according to the terms set forth below, is in the best interest of End-Payor Plaintiffs and the Settlement Class (as defined below) because of the payment of the Settlement Amount (as defined below) and the value of the compliance obligations and Cooperation (as defined below) that the Furukawa Defendants have agreed to provide pursuant to this Agreement;

WHEREAS, the Furukawa Defendants, despite their belief that they are not liable for the claims asserted and their belief that they have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against the Furukawa Defendants with respect to Automotive Wire Harness Systems based on the allegations in the Action, as more particularly set out below;

WHEREAS, the Furukawa Defendants have agreed to provide Cooperation to End-Payor Plaintiffs in the ongoing prosecution of the Action as set forth in this Agreement, and such Cooperation will reduce End-Payor Plaintiffs' substantial burden and expense associated with prosecuting the Action; and

WHEREAS, End-Payor Plaintiffs recognize the benefits of the Furukawa Defendants' Cooperation and recognize that because of joint and several liability, this Agreement with the Furukawa Defendants does not impair End-Payor Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled in the Action from non-Releasees (as defined below) under applicable governing law, including any damages attributable to the Furukawa Defendants' alleged conduct.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees (as defined below), and except as hereinafter provided, without costs as to End-Payor Plaintiffs, the Settlement Class, the Furukawa Defendants, or other Releasees, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions.

1.    "Action" shall refer to *In re Automotive Wire Harness Systems*, Case No. 12-cv-00103 (E.D. Mich.).

2.    "Automotive Wire Harness Systems" has the meaning set forth in Paragraph 3 of the Complaint, and includes the following:  automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring

connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, high voltage wiring, and power distributors.

3.      "Complaint" means End-Payor Plaintiffs' Fourth Amended Consolidated Class Action Complaint filed in the Action (ECF No. 233).

4.      "Cooperation" shall refer to those provisions set forth below in Paragraphs 50-67.

5.      "Cooperation Materials" means any information, testimony, Documents (as defined below) or other material (including information from attorney proffers) provided by the Furukawa Defendants or their counsel under the terms of this Agreement.

6.      "Defendant" means any party named as a defendant in the Action at any time up to and including the date when the Court has entered a final order certifying the Settlement Class described in Paragraph 16 and approving this Agreement under Federal Rule of Civil Procedure ("Rule") 23(e).

7.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a), including, without limitation, electronically stored information. A draft or non-identical copy is a separate Document within the meaning of this term.

8.      "End-Payor Plaintiffs Class Representatives" means those Settlement Class Members, as defined in Paragraph 18 below, who are named plaintiffs in the Complaint, or who are subsequently added as named plaintiffs in the Action prior to the entry of final judgment in the Action against the Furukawa Defendants.

9.      "Execution Date" means the date on which this Agreement has been fully signed and executed on behalf of both End-Payor Plaintiffs and the Furukawa Defendants and the last signature to the Agreement has been delivered.

4

10. "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

11. "MDL Litigation" shall refer to *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.).

12. "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class.

13. "Releasees" shall refer to the Furukawa Defendants and to all of their respective past and present, direct and indirect, parents, subsidiaries, associates, partnerships, and affiliates, including, but not limited to, the predecessors, successors, and assigns of each of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, servants, heirs, executors, administrators, and assigns of each of the foregoing. "Releasees" does not include any Defendant in the MDL Litigation other than the Furukawa Defendants.

14. "Releasors" shall refer to End-Payor Plaintiffs and Settlement Class Members, as defined in Paragraph 18 below, and to their past and present officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, parents, subsidiaries, affiliates, principals, partners, insurers, and all other persons, partnerships, or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing.

15. "Settlement Amount" shall be US $42,560,000.00.

16.     "Settlement Class" is defined as:

All persons and entities who, during the period from and including January 1, 1998 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Automotive Wire Harness Systems as a component part, or indirectly purchased one or more Automotive Wire Harness Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly or for resale.

17.     "Settlement Class Counsel" shall refer to the law firms of:

Cotchett, Pitre, & McCarthy LLP
840 Malcolm Road
Burlingame, CA 94010

Robins Kaplan LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022

Susman Godfrey L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067

18.     "Settlement Class Member" means each member of the Settlement Class who has not timely elected to be excluded from the Settlement Class.

19.     "Settlement Fund" shall refer to the Settlement Amount, together with all income and interest earned thereon after it is deposited into the Escrow Account (as defined below).

20.     "Vehicle" means any automobile, car, light truck, pickup truck, crossover, van, mini-van, sport utility vehicle, or similar motor vehicle.

B.    Approval of this Agreement and Dismissal of Claims Against the Furukawa Defendants.

21.    On the Execution Date of this Agreement, End-Payor Plaintiffs and the Furukawa Defendants shall be bound by its terms, and this Agreement shall not be terminated or rescinded except in accordance with Paragraph 68 of this Agreement.

22.    End-Payor Plaintiffs and the Furukawa Defendants shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Rule 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Action as to the Releasees only.

23.    Within thirty (30) days after the Execution Date of this Agreement, End-Payor Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement ("Motion"). The Motion shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed form of order and final judgment that shall include at least the terms set forth in Paragraph 25 below. The text of these proposed orders shall be agreed upon by End-Payor Plaintiffs and the Furukawa Defendants before submission of the Motion. The Furukawa Defendants shall have reasonable notice of and opportunity to review and comment on the Motion, and End-Payor Plaintiffs shall reasonably consider the Furukawa Defendants' comments. The terms of the proposed order preliminarily approving this Agreement will include, at a minimum, the substance of the following provisions:

(a)    preliminarily approving this Agreement as being fair, reasonable, and adequate to the Settlement Class;

(b)    preliminarily certifying the Settlement Class as meeting the standards for settlement classes under Rule 23;

7

(c)     appointing the law firms identified in Paragraph 17 of this Agreement as Settlement Class Counsel;

(d)     appointing the End-Payor Plaintiffs as class representatives of the Settlement Class;

(e)     directing that notice be given to the Settlement Class Members at a time and in a manner consistent with the terms of this Agreement;

(f)     approving the establishment of the Settlement Fund as defined in Paragraph 19;

(g)     providing that the Court's preliminary approval of this Agreement and preliminary certification of the Settlement Class will have no effect on the rights of any Defendant, including the Furukawa Defendants, to contest the certification of any other proposed classes in the MDL Litigation; and

(h)     staying the Action against the Furukawa Defendants for all purposes except those necessary to effectuate this Agreement.

24.     End-Payor Plaintiffs shall, at a time to be decided in their sole discretion, submit to the Court a motion for authorization to disseminate notice of the Settlement and final judgment contemplated by this Agreement to all members of the Settlement Class identified by End-Payor Plaintiffs ("Notice Motion"). The Notice Motion shall seek an order providing for notice to all members of the Settlement Class in a method designed to meet the requirements of Rule 23 and due process. End-Payor Plaintiffs will submit a draft of the Notice Motion to the Furukawa Defendants sufficiently in advance of the date End-Payor Plaintiffs intend to submit the Notice Motion to the Court for the Furukawa Defendants to review and comment upon the Notice Motion. To mitigate the costs of notice, the End-Payor Plaintiffs shall endeavor, if practicable, to

8

disseminate notice of the Settlement with notice of other settlements that have been reached in the MDL Litigation at the time the Notice Motion is filed. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice in the Action.

25. End-Payor Plaintiffs shall seek, and the Furukawa Defendants will not object unreasonably to, the entry of an order and final judgment by the Court in the Action, the text of which End-Payor Plaintiffs and the Furukawa Defendants shall agree upon. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Class described in Paragraph 16, pursuant to Rule 23, solely for purposes of this Settlement as a settlement class for the Action;

(b)     as to the Action, approving finally this Settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 and directing its consummation according to its terms;

(c)     as to the Furukawa Defendants, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(d)     reserving exclusive jurisdiction over the Settlement and this Agreement, including the interpretation, administration and consummation of this Settlement, to the United States District Court for the Eastern District of Michigan;

(e)     determining under Rule 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to the Furukawa Defendants shall be final;

(f)     providing that (i) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including the Furukawa Defendants, to contest certification of any other class proposed in the MDL Litigation, (ii) the Court's findings in

9

this order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Litigation or on the Court's rulings concerning any party's motion; and (iii) no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or to any party's motion; and

(g) enjoining all Settlement Class Members, and their counsel, from asserting or prosecuting any claim or action against the Furukawa Defendants or the other Releasees that are released by this Agreement.

26. This Agreement shall become final and be deemed to have received "Final Court Approval" within the meaning of this Agreement when (a) the Court has entered a final order in the Action that is consistent with the requirements of Paragraph 25 above, including certifying the Settlement Class described in Paragraph 16 and approving this Agreement under Rule 23(e), and has entered a final judgment in the Action dismissing the Action with prejudice as to the Furukawa Defendants and without costs to them other than those provided for in this Agreement, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to the Furukawa Defendants described in (a) hereof has expired and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the judgment or final approved order in the Action or to toll the time for appeal of the judgment in the Action or, if appealed, approval of this Agreement and the final judgment as to the Furukawa Defendants has been affirmed in its entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 shall not be taken into account in determining the above-stated times.

27.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them (including Cooperation Materials provided pursuant to Paragraphs 50-66), shall be deemed or construed to be an admission by the Furukawa Defendants or the other Releasees, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by the Furukawa Defendants or the other Releasees, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the MDL Litigation, to be used against the Furukawa Defendants or the other Releasees in any action or proceeding, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the MDL Litigation, or in any other action, arbitration, or proceeding whatsoever, against the Furukawa Defendants or the other Releasees.  Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using and/or introducing into evidence the Documents, transactional data, and witness declarations/affidavits or trial testimony produced pursuant to Paragraphs 50-66, subject to the limitations in those Paragraphs and the remainder of Section J, against any other defendants in the Action, subject to the terms and conditions set forth in the Stipulation and Protective Order Governing Production and Exchange of Confidential Information, ECF No. 200, 2:12-md-02311-MOB-MKM (filed July 10, 2012), entered by the Court in the MDL Litigation and in the Action ("Protective Order"), or to develop and promulgate a plan of allocation and distribution for the Settlement Class. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by the Furukawa Defendants, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a

11

proceeding to enforce this Agreement, or to defend against the assertion of Released Claims (as defined below), or as otherwise required by law.

C.  Release, Discharge, and Covenant Not to Sue.

28.  In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 26 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 30 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity), under any federal, state or local law of any jurisdiction in the United States, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any conduct alleged in the Complaint or any act or omission of the Releasees (or any of them), concerning Automotive Wire Harness Systems, including, but not limited to, any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Action ("Released Claims"), provided however, that nothing herein shall release:  (i) any claims based on direct purchases of Automotive Wire Harness Systems; (ii) any claims by automobile dealers that are indirect purchasers of Automotive Wire Harness Systems; (iii) any claims made by any state, state agency, or instrumentality or political

subdivision of a state as to government purchases and/or penalties relating to Automotive Wire Harness Systems; (iv) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claims relating to Automotive Wire Harness Systems; (v) claims concerning any automotive part other than Automotive Wire Harness Systems; (vi) claims under laws other than those of the United States relating to purchases of Automotive Wire Harness Systems made outside of the United States; and (vii) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State.  Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims or conduct at issue in the Released Claims.

29.    In addition to the provisions of Paragraph 28 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, as set forth in Paragraph 26, any and all provisions, rights, and benefits, as to their claims concerning Automotive Wire Harness Systems conferred by Section 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 28 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown,

13

suspected or unsuspected, contingent or non-contingent claim that the Furukawa Defendants and End-Payor Plaintiffs have agreed to release pursuant to Paragraph 28, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.    Settlement Amount.

30.    Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, American Furukawa, Inc., on behalf of the Furukawa Defendants, shall pay or cause to be paid the Settlement Amount into an escrow account to be administered in accordance with the provisions of Paragraphs 31-38 of this Agreement ("Escrow Account"). The Furukawa Defendants shall transfer the Settlement Amount to the Settlement Fund by wiring such funds to the Escrow Account within thirty (30) days following the later of the date (i) the court enters an order preliminarily approving this Settlement as set forth in Paragraph 23, or (ii) the Furukawa Defendants are provided with the account number, account name, and wiring transfer information for the Escrow Account. No part of the Settlement Amount paid by the Furukawa Defendants shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures or punitive recoveries.

E.    Escrow Account.

31.    The Escrow Account will be established at Wells Fargo & Company with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and the Furukawa Defendants, such escrow to be administered by the Escrow Agent under the Court's continuing supervision and control.

32.    The Escrow Agent shall cause the Settlement Amount deposited in the Escrow Account, as well as the resulting Settlement Fund, to be invested in short-term instruments backed

by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Furukawa Defendants shall bear no risk related to the Settlement Fund.

33.     The Settlement Fund held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

34.     The Settlement Fund is, and shall be operated in a manner so that it qualifies as, a qualified settlement fund under section 468B of the Internal Revenue Code, as amended ("Code"), and Treas. Reg. § 1.468B-1, *et seq.*   End-Payor Plaintiffs, Settlement Class Counsel, and the Furukawa Defendants agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1, *et seq.*   In addition, Settlement Class Counsel shall timely take such actions as are necessary to create and maintain the Settlement Fund's status as a qualified settlement fund, including to timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Settlement Class Counsel or the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

35.     For the purpose of Section 468B of the Code, and Treasury Regulation § 1.468B-2(k)(3), as amended, and the regulations promulgated thereunder, the administrator shall be Settlement Class Counsel.  Settlement Class Counsel, as administrator, shall be responsible for the timely and proper performance of the undertakings specified in the regulations promulgated under section 468B of the Code, including, but not limited to, filing all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the information and tax returns described in Treas. Reg. §§ 1.468B-2(k)-(l)).  Such returns (as well as the election described in Paragraph 34) shall be consistent with the provisions of Paragraph 34 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be timely paid out of the Settlement Fund as provided in Paragraph 36 hereof.

36.     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Furukawa Defendants or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 34 through 36 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 35 ("Tax Expenses")), shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the

16

Court any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither the Furukawa Defendants nor any Releasees shall be responsible or have any liability therefor or for any reporting requirements that may relate thereto. End-Payor Plaintiffs and the Furukawa Defendants agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 34 through 36.

37.     Neither the Furukawa Defendants nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses, and shall be indemnified and held harmless for such amounts (including taxes payable by reason of such indemnification) by the Settlement Fund.

38.     If this Agreement does not receive Final Court Approval, including final approval of the Settlement Class as defined in Paragraph 16, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by the Furukawa Defendants into the Settlement Fund (other than costs expended or incurred in accordance with Paragraphs 36 and 40), shall be returned to the Furukawa Defendants from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days of the Court's denial of final approval of the Agreement and/or Settlement Class.

F.     Exclusions.

39.     Subject to Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this Settlement. Subject to Court approval, a request for exclusion that does not

comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Agreement upon Final Court Approval.  Settlement Class Counsel shall, within ten (10) business days of the Opt-Out Deadline, provide the Furukawa Defendants with a list and copies of all opt out requests it receives in the Action and shall file under seal with the Court a list of all members of the Settlement Class who timely and validly opted out of the Settlement.

(a)    Subject to Court approval, any member of the Settlement Class who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement.  The Furukawa Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether any excluded member of the Settlement Class is an indirect purchaser of Wire Harness Systems and/or has standing to bring any claim.

(b)    Subject to Court approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, address, and telephone number.  Further, the member of the Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement.

G.    <u>Payment of Expenses</u>.

40.    The Furukawa Defendants agree to permit use of a maximum of US $500,000.00 of the Settlement Fund towards the costs of notice to the Settlement Class and the costs of administration of the Settlement Fund.  To the extent such costs have been incurred or paid for notice and administration (up to the maximum of US $500,000.00), those expenses are not recoverable if this Settlement does not become final or is terminated or rescinded.  The Escrow

18

Agent shall return all remaining portions of the Settlement Funds to the Furukawa Defendants should this Agreement not receive Final Court Approval or be terminated or rescinded. Other than as set forth in this Paragraph, the Furukawa Defendants shall not be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or Special Master, appeals, trials or the negotiation of other settlements, or for Settlement Class, Settlement Fund, or Escrow Fund administration and costs.

41. To mitigate the costs of notice and administration, End-Payor Plaintiffs shall use their best efforts, if practicable, to disseminate notice with any other settlements reached with the Furukawa Defendants or other defendants in the MDL Litigation and to apportion the costs of notice and administration on a pro rata basis across the applicable settlements.

H. The Settlement Fund.

42. Releasors' sole recourse for settlement and satisfaction against the Releasees of all Released Claims is against the Settlement Fund, and Releasors shall have no other recovery against the Furukawa Defendants or any other Releasee.

43. After this Agreement becomes final within the meaning of Paragraph 26, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court. In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

44. End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as provided by Court

order. The Furukawa Defendants and the other Releasees shall not be liable for any costs, fees, or expenses of any End-Payor Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

I.    Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives.

45.    Settlement Class Counsel may, after preliminary approval of this Agreement by the Court as set forth in paragraph 23 at a time to be determined in their sole discretion, submit an application or applications to the Court ("Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court ("Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall the Furukawa Defendants or any other Releasees be responsible to pay any such awards, fees, expenses, costs, and interest.

46.    Subject to Court approval and except as provided herein, End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses and incentive awards. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or

repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is terminated or rescinded pursuant to Paragraph 68.

47.    The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order, shall not operate to terminate, rescind, or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement.

48.    Neither the Furukawa Defendants nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or End-Payor Plaintiffs of any Fee and Expense Award in the Action.

49.    Neither the Furukawa Defendants nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, End-Payor Plaintiffs, and/or any other person or entity who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

J.    Cooperation.

50.    In return for the release, discharge, and covenant not to sue provided herein, the Furukawa Defendants agree to pay the Settlement Amount and to use their best efforts to provide

21

satisfactory and timely Cooperation, as set forth specifically in Paragraphs 50-66 below, until final judgment of all Automotive Wire Harness Systems claims by End-Payor Plaintiffs in the Action or dismissal with prejudice of all Automotive Wire Harness Systems claims by End-Payor Plaintiffs in the Action, whichever is earlier. Cooperation will take place consistent with the timing set forth specifically in Paragraphs 50-66 below, and in a manner that is in compliance with the Furukawa Defendants' obligations to the United States Department of Justice ("DoJ"), Japanese Fair Trade Commission ("JFTC"), and/or European Commission ("EU"). Settlement Class Counsel and End-Payor Plaintiffs agree to request such Cooperation only when and only to the extent reasonably necessary to their prosecution of the Action. All Cooperation shall be coordinated so as to avoid all unnecessary duplication and expense, shall otherwise be reasonable, and shall not impose undue burden and/or expense on the Furukawa Defendants. The Furukawa Defendants shall not be required to provide Documents or information protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by court order, any foreign or domestic law, or by a government entity.

51. <u>Identity of Individuals</u>. Counsel for the Furukawa Defendants shall provide Settlement Class Counsel with the identity of all current and former directors, officers, and employees of the Furukawa Defendants who: (i) were interviewed by the DoJ, JFTC, and/or EU in connection with alleged price-fixing, bid rigging, market allocation, and/or other unlawful anticompetitive activity concerning the sale of Automotive Wire Harness Systems, if and to the extent such interviews related to automobiles manufactured and sold in the United States; or (ii) appeared before the grand jury in the DoJ's investigation into alleged antitrust violations with respect to the sale of Automotive Wire Harness Systems.

22

52.     <u>Documents</u>.  The Furukawa Defendants will use their best efforts, to the extent it is reasonable, to substantially complete production of non-privileged Documents in their possession, custody, or control that are responsive to End-Payor Plaintiffs' current requests, as limited by agreement with the Furukawa Defendants, and found in the files of agreed-upon custodians, no later than sixty (60) calendar days after the Court's entry of an order preliminarily approving this Agreement, including, but not limited to, documents (i) concerning the Furukawa Defendants' determination of their prices for Automotive Wire Harness Systems, and (ii) showing how employees were trained or instructed to bid and set prices.  The parties acknowledge that documents responsive to End-Payor Plaintiffs' current requests may not exist, that the Furukawa Defendants have already produced extensive responsive documents, that the Furukawa Defendants are under no obligation to produce documents protected by the work-product doctrine, the attorney-client privilege, or any other privilege or doctrine protecting disclosure or documents where production is prohibited by the relevant antitrust agencies, the law of relevant foreign jurisdictions, court and/or protective order, and that the Furukawa Defendants will not undertake further searches for documents responsive to this Paragraph, provided, however, that the Furukawa Defendants will consider a limited, targeted request for additional documents by End-Payor Plaintiffs and respond in good faith to such request.  End-Payor Plaintiffs shall withdraw all currently pending discovery requests to the Furukawa Defendants, and shall seek no further discovery from any entity affiliated with the Furukawa Defendants or any current or former director, officer, or employee of any entity affiliated with the Furukawa Defendants other than as provided for in this Settlement Agreement.

53.     Notwithstanding any other provision in this Agreement, Settlement Class Counsel agrees that it shall maintain, and limit disclosure and use of, all Documents produced by the

23

Furukawa Defendants in accordance with the provisions of the Protective Order, including, but not limited to, Documents designated by the Furukawa Defendants as "Confidential" or "Highly Confidential," as said designations are described in the Protective Order, subject to any challenge that any party may make subject to the Protective Order and any orders of the Court.

54.     Should the Furukawa Defendants inadvertently disclose Documents protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by any court order, foreign or domestic law, or by a government entity, End-Payor Plaintiffs agree (i) that such disclosure does not constitute a waiver of any applicable privilege or confidentiality requirement, (ii) to return such Documents to the Furukawa Defendants and/or destroy any copies of such Documents upon a written request from the Furukawa Defendants, and (iii) that such documents shall not be used by Settlement Class Counsel for any purpose.

55.     <u>Transactional Data</u>.  The Furukawa Defendants will produce transactional data, to the extent it exists, is reasonably accessible in the Furukawa Defendants' electronic databases, and has not already been produced, that are responsive to End-Payor Plaintiffs' current requests, as limited by agreement with the Furukawa Defendants, concerning the Furukawa Defendants' sales of Automotive Wire Harness Systems to Original Equipment Manufacturers or other purchasers of Automotive Wire Harness Systems from January 1, 1997 to December 31, 2014, including the following information:  (i) the date for each sale; (ii) the final price of each sale; (iii) the purchaser to whom each sale was made; (iv) the model, model year(s) and brand of vehicle for which each sale was made, as well as the country of sale of said vehicles; (v) the total amount of Automotive Wire Harness Systems sold in each sale; (vi) the location where each sale was made; and (vii) any ancillary costs associated with each sale such as tooling costs.  Except as provided herein, the

Furukawa Defendants will only produce the transactional data that exists as of the Execution Date of this Agreement and will not be obligated to do any analyses of the data for Settlement Class Counsel, outside of the attorney proffers described in Paragraph 58(a). The Furukawa Defendants will provide any translations of the above data by the Furukawa Defendants that may exist as of the Execution Date of this Agreement.

56.    With respect to any electronic transactional data generated within the two years after the Execution Date of this Agreement, the Furukawa Defendants shall have no on-going obligation to produce such data as it is generated. However, the Furukawa Defendants will provide, in response to a written request from Settlement Class Counsel, a single production of electronic transactional data generated during the period from January 1, 2015 to two years after the Execution Date of this Agreement, as it exists in the Furukawa Defendants' electronic databases at the time of the request, within sixty (60) days of the receipt of such request. The Furukawa Defendants will preserve such transactional data until two years after the Execution Date of this Agreement.

57.    The Furukawa Defendants will produce transactional data only from existing electronic transactional databases. It is understood that certain categories of the aforementioned information are not maintained by the Furukawa Defendants in the form of transactional data. In producing transactional data pursuant to Paragraphs 55-56, the Furukawa Defendants are not obligated to compile any data from any less centralized or comprehensive source, including, without limitation, individual invoices, purchase orders, personal computers, hard copy files, transactional Documents, servers or manufacturing facilities. Notwithstanding any other provision in this Agreement, Settlement Class Counsel agrees that it shall maintain all data produced by the Furukawa Defendants as "Highly Confidential," as said designation is described

in the Protective Order, subject to any challenge that any party may make subject to the Protective Order and any order(s) of the Court.

58.    Attorney Proffers.    Additionally, the Furukawa Defendants shall use their best efforts to cooperate with Settlement Class Counsel as set forth below.

(a)    The Furukawa Defendants' counsel will make themselves available at a mutually agreed-upon location in the United States for up to two meetings of one business day each to provide an attorney's proffer of facts known to them regarding Documents, transactional data, witnesses, meetings, communications, agreements with competitors, and background information not covered by privilege or other protections available under any applicable statute or United States or foreign law. Any such attorney proffers shall be coordinated with, and occur at the same time as, any attorney proffers to be provided by the Furukawa Defendants in settlements of indirect purchaser claims entered into by the Furukawa Defendants in the MDL Litigation and any related obligations that may arise from any other settlement. It is understood that the Furukawa Defendants have no obligation to seek new or additional information or documents from any of their current or former directors, officers, and employees in connection with any proffer or otherwise; however, the Furukawa Defendants will in good faith consider requests for new or additional information or documents, and will produce such information or documents, if appropriate, in their discretion. Notwithstanding any other provision in this Agreement, Settlement Class Counsel shall maintain all statements made by the Furukawa Defendants' counsel as "Highly Confidential," as said designation is described in the Protective Order, and shall not use the information so received for any purpose other than the prosecution of claims in the Action against parties other than the Furukawa Defendants and the other Releasees. The parties and their counsel further agree that any statements made by the Furukawa Defendants' counsel in connection with

and/or as part of this Settlement, including the attorney proffer(s) referred to in this Paragraph, shall not be disclosed to any other party and shall be governed by Federal Rule of Evidence 408 and, otherwise, shall not be deemed admissible into evidence or to be subject to further discovery. Notwithstanding anything herein, Settlement Class Counsel may use information contained in such statements in the prosecution of claims in the Action against parties other than the Furukawa Defendants and the other Releasees, and may rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

(b)    The Furukawa Defendants further agree to make four (4) persons available for an interview and/or a deposition, provide four (4) declarations or affidavits from the same persons for filing in the Action, and make those persons available to testify at trial in the Action. Each such deposition shall be conducted in the Action at a mutually agreed-upon location, and shall be limited to a total of seven (7) hours over one (1) day unless the deposition is taken in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days. If any such interview, deposition, or trial testimony takes place outside of the country of the witness's residence, Settlement Class Counsel shall reimburse the Furukawa Defendants for such person's economy class air fare and up to $450 per day for lodging and expenses. It is understood that the Furukawa Defendants may be unable to make available for an interview, deposition, declaration or affidavit, or trial testimony any person who is no longer an officer, director, or employee of the Furukawa Defendants at the time Settlement Class Counsel request such interview, deposition, declaration or affidavit, or trial testimony.

59.     In addition to the foregoing, after conducting a reasonable search, the Furukawa Defendants shall, to the best of their knowledge, identify those vehicles sold in the United States that contain Automotive Wire Harness Systems sold by the Furukawa Defendants.

60.     In addition to their Cooperation obligations set forth herein, the Furukawa Defendants agree to produce through affidavit(s) or declaration(s) and/or at trial, in Settlement Class Counsel's discretion and upon reasonable notice, a reasonable number of current employees whom Settlement Class Counsel, in consultation with counsel for the Furukawa Defendants, reasonably and in good faith believe are qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any documents or transactional data produced or to be produced by the Furukawa Defendants. Settlement Class counsel agree to use their best efforts to obtain stipulations that would avoid the need to call the Furukawa Defendants' employees as witnesses at trial for the purpose of obtaining such evidentiary foundations. Nothing in this provision shall prevent the Furukawa Defendants from objecting to the reasonableness of the number or identity of such persons selected by Settlement Class Counsel. Settlement Class Counsel shall reimburse the Furukawa Defendants for reasonable travel expenses incurred by any such person in connection with his or her trial testimony, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered. To the extent a person selected by Settlement Class Counsel cannot travel to provide trial testimony, the Furukawa Defendants shall use their best efforts to provide for *de bene esse* trial deposition testimony.

61.     End-Payor Plaintiffs and Settlement Class Counsel agree they will not use the Cooperation Materials provided by the Furukawa Defendants or the other Releasees or their representatives under this Agreement for any purpose other than the prosecution of claims in the

28

Action against parties other than the Furukawa Defendants and the other Releasees, and will only use such Materials in the Action consistent with the Protective Order, and will not use them beyond what is reasonably necessary for the prosecution of such claims in the Action or as otherwise required by law.  All Documents and other Cooperation Materials provided pursuant to this Agreement will be deemed "Highly Confidential," as said designation is described in the Protective Order, and be subject to the Protective Order as if they had been produced in response to discovery requests and so designated.

62.     The Furukawa Defendants' obligations to provide Cooperation shall not be affected by the releases set forth in this Settlement Agreement.  Unless this Agreement is terminated, rescinded, disapproved, or otherwise fails to take effect, the Furukawa Defendants' obligations to provide Cooperation under this Agreement shall continue only until (i) otherwise ordered by the Court, (ii) the date of final judgment on all Automotive Wire Harness Systems claims by End-Payor Plaintiffs in the Action, or (iii) the date of dismissal with or without prejudice of all Automotive Wire Harness Systems claims by End-Payor Plaintiffs in the Action, whichever is earlier.

63.     If this Agreement is terminated, rescinded, disapproved, otherwise fails to take effect, or if final judgment has been entered by the Court against all Defendants in the Action (collectively, "Court Termination"), unless otherwise agreed by the Furukawa Defendants, within sixty (60) days after Court Termination, End-Payor Plaintiffs must return or destroy all Cooperation Materials received from the Furukawa Defendants to the extent required by the Protective Order, and must comply with all other terms of the Protective Order governing such return or destruction.

64.     In the event that this Agreement fails to receive Final Court Approval as contemplated in Paragraphs 25-26 hereof, including Final Court Approval of the Settlement Class as defined in Paragraph 26, or in the event that it is terminated or rescinded by either party under any provision herein, the parties agree that neither End-Payor Plaintiffs nor Settlement Class Counsel shall be permitted to introduce into evidence against the Furukawa Defendants and the other Releasees, at any hearing or trial, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Action, any Documents or any other Cooperation Materials provided by the Furukawa Defendants and/or the other Releasees, their counsel, or any individual made available by the Furukawa Defendants pursuant to Cooperation (as opposed to information obtained from other sources or pursuant to a court order other than a court order enforcing the Cooperation obligations).   This limitation shall not apply to any discovery of the Furukawa Defendants in which Settlement Class Counsel attends as part of the Action.   Notwithstanding anything contained herein, End-Payor Plaintiffs and the Settlement Class are not relinquishing any rights to pursue discovery against the Furukawa Defendants in the event that this Agreement fails to receive Final Court Approval as contemplated in Paragraphs 25-26 hereof, including Final Court Approval of the Settlement Class as defined in Paragraph 16, or in the event that it is terminated or rescinded by either party under any provision herein.

65.     The Furukawa Defendants need not respond to discovery requests made pursuant to the Federal Rules of Civil Procedure by End-Payor Plaintiffs or Settlement Class Counsel, meet and confer or otherwise negotiate with End-Payor Plaintiffs or Settlement Class Counsel regarding discovery requests previously served in the Action, or otherwise participate in the Action during the pendency of the Agreement.   Within five days of the Execution Date, the parties shall mutually

30

withdraw any discovery requests served on each other and shall withdraw from participation in any pending motions filed against each other.  This withdrawal of discovery and pending motions shall be without prejudice to reinstating such discovery or motions if this Agreement fails to receive Final Court Approval or in the event that it is terminated or rescinded by either party under any provision herein.   Other than to enforce the terms of this Agreement, neither the Furukawa Defendants nor End-Payor Plaintiffs shall file motions against the other, in the Action, during the pendency of the Agreement.

66.    In the event that the Furukawa Defendants produce Documents or provide declarations or written responses to discovery in the other Automotive Wire Harness Systems cases (a "Relevant Production"), the Furukawa Defendants shall produce all such Documents, declarations, or written discovery responses to End-Payor Plaintiffs contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by the Furukawa Defendants to End-Payor Plaintiffs. This Agreement does not restrict Settlement Class Counsel from attending and/or participating in any deposition in the MDL Litigation.  Settlement Class Counsel may attend and/or participate in any depositions of the Furukawa Defendants' witnesses in the Action in addition to the depositions set forth in Paragraph 58(b), provided that the time for participation of Settlement Class Counsel and of counsel for the Automobile Dealership Plaintiffs shall not expand the time permitted for the deposition provided in orders of the Court, and Settlement Class Counsel shall not ask the Court to enlarge the time of any deposition of a current or former employee of the Furukawa Defendants. Such participation by Settlement Class Counsel in any depositions of the Furukawa Defendants' witnesses will not limit the number of depositions to be provided pursuant to Paragraph 58(b), provided that no current or former employee of the Furukawa Defendants will be deposed more

31

than once pursuant Rule 30(b)(1).  End-Payor Plaintiffs and Settlement Class Counsel agree to use their best efforts to ensure that any depositions taken pursuant to Paragraph 58(b) are coordinated with any other depositions noticed in the Action to avoid unnecessary duplication.

67.     If Settlement Class Counsel believes that the Furukawa Defendants have refused to use their best efforts to cooperate under the terms of this Agreement, Settlement Class Counsel shall meet and confer with the Furukawa Defendants.  Upon reaching an impasse in any meet and confer, Settlement Class Counsel may seek an Order from the Court compelling the Furukawa Defendants to use best efforts.  Nothing in this provision shall limit in any way the Furukawa Defendants' ability to defend the level of cooperation they have provided or to defend their compliance with the terms of the Cooperation provisions in this Agreement.

K.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

68.     If the Court refuses to approve this Agreement or any part hereof, including, but not limited to, if the Court does not certify the Settlement Class in accordance with the specific Settlement Class definition set forth in Paragraph 16 of this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 25 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then the Furukawa Defendants and End-Payor Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 82.  A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

32

69.     In the event that this Agreement does not receive Final Court Approval as set forth in Paragraph 26, or this Agreement otherwise is terminated or rescinded pursuant to Paragraph 68, then:  (i) this Agreement shall be of no force or effect, except as expressly provided in this Agreement; (ii) any and all parts of the Settlement Amount caused to be deposited in the Settlement Fund (including interest earned thereon) shall be returned forthwith to the Furukawa Defendants less only disbursements made in accordance with Paragraph 40 of this Agreement; and (iii) the Furukawa Defendants shall be entitled to any tax refunds owing to the Settlement Fund.  At the request of the Furukawa Defendants, Settlement Class Counsel shall file claims for any tax refunds owed to the Settlement Fund and pay the proceeds, after deduction of any fees and expenses incurred with filing such claims for tax refunds, to the Furukawa Defendants.  The Furukawa Defendants expressly reserve all rights and defenses if this Agreement does not become final.

70.     Further, and in any event, End-Payor Plaintiffs and the Furukawa Defendants agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by the Furukawa Defendants or the other Releasees, to be used against the Furukawa Defendants or the other Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against the Furukawa Defendants or the other Releasees, and evidence thereof shall not be discoverable or used in any way in the Action or in the MDL Litigation, against the Furukawa Defendants or the other Releasees.  Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using Documents, transactional data, and

witness declarations/affidavits or trial testimony produced pursuant to Paragraphs 50-66, as otherwise authorized in this Agreement.

71.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as Cooperation by the Furukawa Defendants.

72.     The parties to this Agreement contemplate and agree that, prior to Final Court Approval of the Settlement as provided for in Paragraphs 25-26 hereof, appropriate notice (i) of the Settlement, and (ii) of the hearing at which the Court will consider the approval of this Agreement, will be given to End-Payor Plaintiffs and Settlement Class Members.

73.     The Furukawa Defendants, End-Payor Plaintiffs, and Settlement Class Counsel agree not to disclose publicly or to any other person the terms of this Agreement until this Agreement is fully executed by all parties.

74.     The Furukawa Defendants shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715.

75.     This Agreement does not settle or compromise any claim by End-Payor Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator in the Action other than the Furukawa Defendants and the other Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by End-Payor Plaintiffs and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Furukawa Defendants and the other Releasees,

for sales made by the Furukawa Defendants and the Furukawa Defendants' alleged illegal conduct, are specifically reserved by End-Payor Plaintiffs and Settlement Class Members. The Furukawa Defendants' indirect sales to the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than the Furukawa Defendants and the other Releasees. The Furukawa Defendants shall not be responsible for any payment to End-Payor Plaintiffs other than the amount specifically agreed to in Paragraphs 15 and 30 of this Agreement.

76.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by End-Payor Plaintiffs and the Settlement Class, and the Furukawa Defendants, including challenges to the reasonableness of any party's actions. This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice of law or conflict of laws principles. The Furukawa Defendants will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

77.     The Furukawa Defendants agree for a period of 24 months from the date of the entry of final judgment not to engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of any Automotive Wire Harness Systems in the United States.

78.     This Agreement constitutes the entire, complete and integrated agreement among End-Payor Plaintiffs, the Settlement Class, and the Furukawa Defendants pertaining to the

Settlement of the Action against the Furukawa Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between End-Payor Plaintiffs and the Furukawa Defendants in connection herewith.  This Agreement may not be modified or amended except in writing executed by End-Payor Plaintiffs and the Furukawa Defendants, and approved by the Court.

79.    This Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of End-Payor Plaintiffs and the Furukawa Defendants and the other Releasees.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by End-Payor Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than the Furukawa Defendant entities which are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

80.    This Agreement may be executed in counterparts by End-Payor Plaintiffs and the Furukawa Defendants, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

81.    Neither End-Payor Plaintiffs nor the Furukawa Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

82.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar

notice constituting an acknowledgement of an email receipt for purposes of this Paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

83.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to Court approval.

84.     This Agreement shall become effective upon:  (i) its execution by Settlement Class Counsel and the Furukawa Defendants' counsel as provided below; and (ii) approval by the Board of Directors of the Furukawa Defendants.  The Furukawa Defendants shall promptly notify End-Payor Plaintiffs upon receipt of such approval.

Date: August 3, 2016

Steven N. Williams
Elizabeth Tran
Demetrius X. Lambrinos
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com
etran@cpmlegal.com
dlambrinos@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

37

_Marc M. Seltzer_

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Class*

Date: August 5, 2016

_Larry S. Gangnes_

Larry S. Gangnes
Heidi B. Bradley
**LANE POWELL PC**
U.S. Bank Centre
1420 Fifth Ave., Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: (206) 223-7000
gangnesl@lanepowell.com
bradleyh@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
**LANE POWELL PC**
MODA Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com

38

yamaguchim@lanepowell.com
hawkesp@lanepowell.com

*Counsel for Furukawa Electric Co., Ltd. and American Furukawa, Inc.*